Robert CRAIG, Frank P. North, Peter V. Pappas, and Estate of Jack E. Walker, Petitioners,

v.

UNITED STATES of America, Respondent.

No. 74 CR 879.

United States District Court, N.D. Illinois, E.D.

Jan. 6, 1989.

Edward J. Calihan, Jr., Patrick J. Calihan, Chicago, Ill., for petitioners.

Kristina Anderson, Asst. U.S. Atty., Chicago, Ill., for respondent.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On June 25, 1976, a federal jury found Robert Craig, Peter V. Pappas, Frank P. North, Jr., and Jack Walker guilty of numerous counts of mail fraud and conspiracy, in violation of 18 U.S.C. §§ 371 and 1341 (1976). The government obtained these convictions by proving that Pappas had schemed to pass legislation easing weight limits on Illinois highways for cement trucks. He did this by channelling bribes to various state officials, including Craig, North, and Walker, who were Illinois legislators. Craig and North also served with Pappas on the Illinois Motor Vehicle Laws Commission, which Pappas swayed with bribes to recommend favorable legislation. The government argued at trial that this scheme defrauded the citizens and the state of Illinois of their right to the loyal, honest, and faithful services of their public employees. Additionally, the government submitted that Craig and Pappas had violated the Travel Act, codified at 18 U.S.C. § 1952. The jury agreed.

Following trial, the court sentenced Craig, North, and Walker each to three years imprisonment and a $5,000 fine, and sentenced Pappas to five years imprisonment and a $10,000 fine. The defendants appealed their convictions to the Seventh Circuit, but their appeals proved unsuccessful. See *United States v. Craig,* 573 F.2d 455 (1977). The four left for prison and served their sentences. Craig subsequently paid his fine, but the other three did not: Pappas paid $3,250, and has not paid anything since August 1987; North paid $1,600, and has not paid anything since December 1987; while Jack Walker died in 1980, having paid only $200.

Pappas and North feel that they have a good reason for not paying what they owe to the government. In the summer of 1987, the Supreme Court handed down its decision in *McNally v. U.S.,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The defendants in *McNally* were engaged in a kickback scheme involving the awarding of state insurance contracts. The government obtained convictions against the defendants under 18 U.S.C. § 1341 through use of the same theory of fraud employed in this case: the *McNally* defendants had deprived the citizens and the State of Kentucky of their right to loyal, honest, and faithful service from their government employees. The Supreme Court, however, reasoned that such a right did not constitute property, which it held to be a necessary element of the crime of mail fraud. The Court thus reversed the convictions.

■ The acts in this case are no more honorable than those in *McNally,* but the convictions for the acts are no less illegal.

Craig, Pappas, North, and the Estate of Jack Walker thus have petitioned this court for a writ of coram nobis, pursuant to 28 U.S.C. 1651 (1982). They ask this court to set aside their convictions and return the fines that they have paid, in light of the holding of *McNally*. They are not the first people in this Circuit to seek such a writ after having been convicted under the "intangible rights" theory of mail fraud. See, for example, *U.S. v. Keane*, 852 F.2d 199 (7th Cir.1988); *U.S. v. Bonansinga*, 855 F.2d 476 (7th Cir.1988). As these cases demonstrate, a person does not have the right to obtain the writ merely because a law under which he or she is convicted evolves to the point where such a conviction would be impossible. Rather, the person must show that the defect in his or her conviction "is the type of defect that would have justified relief during the term of imprisonment," and that it "produces lingering civil disabilities (collateral consequences)." *Keane*, 852 F.2d at 203.

The petitioners contend that the government's use of the intangible rights theory of mail fraud resulted in a defect that would have justified relief under 28 U.S.C. § 2255, the federal statute that provides a remedy for those improperly held in federal custody. They argue that the indictments for mail fraud and conspiracy would not have been possible without use of the intangible rights theory, and for that reason their convictions are illegal. Assuming for the moment that this contention is true, the petitions of North and Walker's Estate are the only ones that merit further consideration. This is because the jury found Pappas and Craig guilty of violating the Travel Act, which provides in part:

(a) Whoever travels in interstate ... commerce or uses any facility in interstate ... commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or ...

(3) otherwise promote, manage, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this subsection "unlawful activity" means ... extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

Counts 13 and 14 of the indictment charged Pappas, Craig, and others of causing Morris A. Lauwereins to travel in interstate commerce between Indianapolis, Indiana, and the Northern District of Illinois to facilitate the promotion, management, and carrying on of bribery, in violation of Ill.Rev.Stat. ch. 38, ¶ 33–1 (1975). The Supreme Court's rejection of the intangible rights theory of mail fraud in *McNally* did nothing to change the Illinois crime of bribery, and thus Pappas and Craig's Travel Act convictions are as valid today as they were prior to *McNally*. For this reason, Pappas and Craig are not entitled to a writ of coram nobis.

North and the Estate of Walker's petitions for the writ present more complicated cases, as both North and Walker were convicted only of mail fraud and conspiracy to commit mail fraud. Moreover, the government relied solely upon the intangible rights theory of mail fraud to obtain their convictions. This in itself does not entitle either Walker's Estate or North to the writ. As the Seventh Circuit noted in *Keane*, "[a]n indictment adverting principally to rights to faithful service still may lead to a valid conviction if the prosecution shows that the defendant defrauded someone out of property, including intangible property." While that showing need not be one that would overcome objections to the prosecution's case on direct appeal, the statement of any offense in the indictment marks "the end of things for relief in the nature of coram nobis." *Keane*, 852 F.2d at 205. See also *Bonansinga*, 855 F.2d at 478–79 (refusing to grant writ of coram nobis where indictment supported conviction for mail fraud after stripping out the intangible rights theory).

The government contends that North and Walker did scheme to defraud someone out of property—namely, the citizens and the State of Illinois. The government contends that it takes "little imagination" to conclude that the bribery scheme would have deprived the citizens and the State of Illinois of good roads, since having heavier cement trucks on the highways would have led to incrementally greater road damage.

It takes even less imagination to describe the government's theory of fraud as attenuated. The government has cited no cases in support of its theory, which has a long and brittle chain of causation. The indictment does not allege that the five representatives and three senators involved in this case or the Illinois Motor Vehicle Laws Commission had control over the state's roads. According to the indictment, the Commission

> had the authority and duty to study and investigate ... the laws of Illinois relating to the operation of motor vehicles and the transportation of persons and property by motor vehicles; the said Commission had the authority and duty to study and investigate ... the construction and condition of the highways of Illinois and the effect upon such highways resulting from the operation of vehicles of different types, sizes and weights; the said Commission had the authority to hold hearings; and the said Commission had the authority and duty to report its findings, conclusions and recommendations to the [Illinois] General Assembly.

At most, the Commission had the ability to influence the disposition of the State's property, but actual control over the property lay elsewhere. Similarly, eight members of the Illinois legislature certainly had the power to influence the state's laws, but nothing in the indictment states that they had control over those laws. The lack of power that these individuals had over Illinois roads is evidenced by the ultimate disposition of their corrupt bill, which Governor Richard J. Ogilvie vetoed.

It is evident from the indictment that the only things which these defendants controlled were their votes and recommendations. At trial the government accused these men of depriving the citizens and the State of Illinois of their right to have these votes cast, and these recommendations made, honestly. These powers and duties, however, did not amount to sufficient control over the state's highways to allow these defendants to dispose of that control, either properly or improperly. To this extent this case differs from every other post-*McNally* mail fraud case in which the Seventh Circuit has upheld a conviction. See *United States of America v. Folak*, 865 F.2d 110 (7th Cir.1988) (sheriff's deputy pocketed moneys or seized inventories of delinquent taxpayers, which belonged to state); *U.S. v. Bailey*, 859 F.2d 1265, 1275–78 (7th Cir.1988) (bank president artificially inflated bank's net worth to stave off regulatory foreclosure, thereby putting depositors and government's property at risk; president also depleted bank's assets for personal gain); *Bonansinga*, 855 F.2d at 476 (utility official took government's paint and auto parts for his own benefit); *U.S. v. Eckhardt*, 843 F.2d 989 (7th Cir.1988) (defendant misrepresented investment opportunity and invested money in a manner which led to tax and investment losses for investors); *U.S. v. Wellman*, 830 F.2d 1453 (7th Cir.1987) (defendant misrepresented conformance of storage tanks to government regulations, thereby overcharging buyer and causing buyer to incur costly repairs).

The closest case to this one is *Keane*, where defendant Keane used his position as Chairman of the Finance Committee of the Chicago City Council to "induce" the passage of legislation and governmental land purchases that favored partnerships in which he had an interest. A closer look at *Keane*, however, reveals that the Seventh Circuit had stronger bases for upholding a mail fraud conviction in that case. First, the Seventh Circuit held that apart from the inducements, Keane profited from confidential information in which the City of Chicago had a property interest. Second, Keane's power to influence the passage of favorable legislation was greater than that possessed by the conspirators here. The

government proved at Keane's trial that as Finance Chairman, Keane had effective control over requirements for reserve bids at City tax assessment auctions. See *United States v. Keane*, 522 F.2d 534, 540–41 (7th Cir.1975). By contrast, the conspirators in this case were never sure that their efforts would result in favorable legislation. Third, Keane contacted "friends" who were in charge of discretionary purchases of properties for various governmental agencies, and persuaded them to buy land in which he had an interest at inflated prices. See *id.* at 541–44. The government never alleged or proved comparable actions in this case.

■ This court concludes that the indictment charged nothing more (and nothing less) than the corruption of the legislative fact-gathering and law-making process, and not the taking of the State's property. The indictment insufficiently alleged mail fraud, and thus North and Walker would be entitled to relief under § 2255 if they were in federal custody today. This court now turns to the second element that is necessary before this court can issue a writ of coram nobis: whether North and the Estate of Walker are suffering lingering civil disabilities as a result of these convictions. As the court in *Keane* noted, there are many "substantial civil disabilities" that can attach to a criminal conviction. "These include loss of the rights to vote, hold occupational licenses (including law licenses), and bear arms; criminal convictions also may lead to enhanced penalties for future offenses." The court in *Keane* agreed that the writ of coram nobis was a proper means for a court to remove these disabilities. *Keane*, 852 F.2d at 203.

Keane's counsel on his petition for a writ of coram nobis told the court that the 80-year-old Keane was no longer under any civil disability, and the court relied on this admission as one of its alternative reasons for denying issuance of the writ. *Id.* at 203–04, 206. North submits, however, that he is under several civil disabilities. See Ill.Rev.Stat. ch. 110½, ¶¶ 6–13(a), 9–1, 11–3(a), 11–5(a) (Smith–Hurd Ann.1987) (impliedly excluding a person convicted of a felo-

ny from serving as an executor, administrator, or guardian in a probate matter); *id.* at ch. 108½, ¶¶ 2–156, 14–149 (prohibiting payment of state pension to former legislators or state employees who have been convicted of a felony arising out of their public service); *id.* at ch. 17, ¶ 1469(2) (convicted person may not obtain license for business of renting safety deposit vaults); *id.* at ch. 121, ¶ 307.9 (state police); *id.* at ch. 17, ¶ 5305(2) (license for financial planning/management business); *id.* at ch. 32, ¶ 360.7(4) (license for non-profit consumer credit counselling corporation); *id.* at ch. 8, ¶ 37–6(b) (director of Illinois Racing Board); *id.* at ch. 21, ¶ 64.10 (cemetery license); *id.* at ch. 24, ¶ 3–6–5 (appointment as auxilliary police officer); *id.* at ¶ 6–3–9 (election to certain municipal offices); *id.* at ch. 56½, ¶ 242.2 (license for slaughtering, processing, raising, or breeding certain animals); *id.* at ch. 85, ¶ 2303 (license to run raffle).

The government argues that North has not shown a "present" disability as a result of any of these laws, and that *Keane* stands for the proposition that the chance of "future" disability is insufficient to support issuance of the writ. This court disagrees. The language from *Keane* that this court quoted above explicitly states that a petitioner can seek relief from the prospective prohibitions of state occupational regulations and the possibility of an enhanced sentence upon a future conviction. We attribute the *Keane* court's refusal to grant the writ in that case to the presence of strong alternative grounds for not issuing the writ, Keane's reinstatement to the Illinois bar, his express admission of the absence of disabilities in his case, and the unlikelihood of his changing occupations at the age of eighty years.

North thus is entitled to a writ of coram nobis. The petition of the Estate of Walker creates a more difficult problem, as Walker himself is no longer suffering civil disabilities from his conviction. Judge Plunkett recently held in *United States of America v. Otto Kerner, Jr.*, 1988 U.S. Dist. LEXIS 7605 —— F.Supp. ——, (N.D. Ill. July 14, 1988) that an estate's interest in clearing the name of the decedent or

recovering fines paid by the decedent during his or her lifetime did not constitute a continuing civil disability under *Keane.* This case, however, is different: as a result of Jack Walker's conviction, his widow cannot collect a state pension. See Ill.Rev. Stat. ch. 108½, ¶¶ 2–121–121.1 (spouse of deceased participant in state pension plan collects 66⅔% of participant's share until spouse's death); *id.* at ¶¶ 2–156, 14–199 (former legislators and state employees cannot collect state pension if convicted of felony).

*Keane* correctly ascertained the competing interests in cases such as these: the interest of society in the finality of judgments, and the interest of the person in having civil disabilities stemming from an erroneous conviction removed. This court does not perceive a threat to the former interest in a case like this one, where a person who suffers a tangible loss from the erroneous criminal conviction of another person seeks to have that error corrected. Mrs. Walker might have alternative ways of obtaining her pension in this case, but *Keane* in no way requires exhaustion of remedies prior to the issuance of a writ of coram nobis. Rather, *Keane* requires a petitioner to establish only the fact of the error and the need for removal of a certain disability. Those conditions are met in this case, and as a result this court will grant the Estate of Walker its petition for the writ.

A final note: Those not familiar with the requirements for the writ of coram nobis may find the outcomes of the post-*McNally* cases for federal relief bewildering. Even in the petitions presently before this court one sees relief granted to two who received bribes and betrayed their public offices, and relief denied to two who committed the same acts but unluckily crossed state lines while doing so. It must be emphasized that in each of these petitions the issue is not whether the petitioners acted rightly or wrongly, in the moral sense of right and wrong. Rather, these petitions test the limits of the power of the United States Government to punish persons who, at least in this case, committed what surely are crimes under state law. It is those limits that are confusing, and perhaps lacking in coherence. Nevertheless, it is the duty of this court to police those limits, even if it means removing sanctions from those who in some sense deserve them. It is not North and Walker who are being vindicated here, but rather the rule of law.

The petitions of Robert Craig and Peter V. Pappas for a writ of coram nobis are denied, and the petitions of Frank P. North, Jr. and the Estate of Jack E. Walker are granted.