**John J. WARD, Petitioner–Appellee,**

v.

**UNITED STATES of America, Respondent–Appellant.**

**No. 87–2659.**

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1988.

Decided May 10, 1988.

Lawrence E. Rosenthal, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for respondent-appellant.

Patrick A. Tuite and Brent D. Stratton, Chicago, Ill., for petitioner-appellee.

Before WOOD, Jr., POSNER, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

The Justice Department in recent years has devoted substantial resources to prosecuting corrupt public officials. An important weapon in this campaign has been the "intangible rights" doctrine of federal mail and wire fraud (18 U.S.C. §§ 1341, 1343), a doctrine whereby public officials who accept bribes are deemed by doing so to have defrauded the public of its right to the honest provision of public services. Last year, in a stunning setback for the Department, the Supreme Court rejected the intangible-rights doctrine. *McNally v. United States,* — U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The Department has tried to minimize the blow by pressing the federal courts, including this court, to interpret the *McNally* decision as narrowly as possible—so narrowly, in fact, as to save convictions that had been obtained before *McNally* under the intangible-rights approach. We confronted one such effort in *United States v. Holzer,* 840 F.2d 1343 (7th Cir.1988). Holzer was an Illinois state court judge who had been convicted of mail fraud for having deprived the people of the state of their right to the honest administration of justice, by soliciting and accept-

ing bribes. The Department tried to save the conviction by arguing that under Illinois law the state had a constructive trust in the bribe moneys received by Holzer, so that by failing to turn them over to the state he deprived it of its tangible right to them. We were not persuaded, and vacated the conviction.

The present case involves another, and closely related, effort to save a pre-*McNally* intangible-rights conviction. John Ward, an attorney, was indicted in 1986 and convicted in 1987 (shortly before the *McNally* decision) of two counts of mail fraud. The fraud arose out of Ward's representation of David Washington, who had been charged with drunken driving and whose case was pending before an Illinois state court judge, John McCollom, in Chicago. McCollom was known to take bribes. His "bagman," Chicago policeman Ira Blackwood, would receive the cash bribe from the attorney wanting a case fixed and would pass the money on to McCollom. Through the good offices of Blackwood, Ward agreed with McCollom on a $500 bribe in exchange for a favorable disposition of the case against Washington. Ward gave Blackwood $600 in cash and Blackwood passed $500 on to McCollom, keeping the rest as compensation for his services in the transaction. When Washington's case was called, McCollom, having forgotten about the bribe, sentenced Washington to 364 days in jail. Ward complained to Blackwood, who spoke to McCollom, who ordered Washington released from jail.

Washington had posted two cash bail bonds, totaling $700, to secure his appearance in court on the drunk-driving charge. Under the Illinois bail law (the constitutionality of which was upheld by the Supreme Court in *Schilb v. Kuebel*, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971), over objections based on the due process and equal protection clauses), this money is returned to the defendant upon the disposition of his case, minus any fine or costs imposed, and minus 10 percent for the costs of the bail bond. See Ill.Rev.Stat. ch. 38, ¶ 110–7. McCollom had not imposed any fine or costs when he sentenced Washington to jail. When, having been reminded of the bribe, McCollom ordered Washington released from jail, he also ordered the cash bonds (minus the 10 percent bail bond costs) refunded, by checks made payable and mailed to Ward rather than to Washington. A criminal defendant's lawyer will often look to the refund of the cash bond as the source of payment of his attorney's fee, and, if the defendant consents, the court may order that the refund be made to the defendant's lawyer, in whole or part. See Ill.Rev.Stat. ch. 38, ¶ 110–7(f). These two mailings are the two counts of mail fraud with which Ward was charged and of which he was convicted. Ward used the refunds to reimburse himself for the bribe money. He also collected some $2,400 from Washington in attorney's fees.

For his part in the scheme to bribe McCollom and Blackwood, Ward was given a suspended sentence of a year and a day followed by probation. McCollom and Blackwood were convicted separately for their roles in the scheme. (All these convictions, like that of Holzer, were fruits of the Justice Department's "Graylord" investigation, an investigation of judicial corruption in the state courts of Cook County, Illinois.) After the Supreme Court decided *McNally*, Ward filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. The district court granted the motion and the government appeals. Although Ward had not questioned the intangible-rights theory at trial, the government does not argue that he has waived the challenge, or that this is not the kind of challenge that can be raised in a collateral attack on a conviction. Its only argument is that this is not (or not only) an intangible-rights case, because the state had a property right in the cash bonds and Ward converted that property right when as part of the scheme Judge McCollom had the cash bonds refunded to Ward.

The requirement of posting a cash bail bond has a dual purpose: to increase the cost to the defendant of failing to appear for trial, and to provide security for the payment of costs and fines in the event of conviction (and also to provide

security for the payment of the defendant's attorney, but that is not an interest of the state, at least in a narrow sense). *People v. Dale*, 112 Ill.2d 460, 98 Ill.Dec. 39, 493 N.E.2d 1060 (1986). A security interest is a property right, *United States v. Security Industrial Bank*, 459 U.S. 70, 75–76, 103 S.Ct. 407, 410–11, 74 L.Ed.2d 235 (1982); 1 Anderson on the Uniform Commercial Code § 1–201:188 (3d ed. 1981), and the Supreme Court's post-*McNally* decision in *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), holds that taking a property right by fraud will support a conviction under the mail-fraud statute, provided the other statutory elements are present. The government argues that the state's interest in the cash bail bond is that of a possessory lien creditor—a dubious contention, cf. Restatement of Security § 59 (1941), but not one we need explore. The problem is not that the state lacks the sort of interest in cash bonds that is tangible enough to support a prosecution under the mail or wire fraud statutes as interpreted in *McNally* or *Carpenter*, but that Ward did not deprive the state of its interest. The state held on to the bonds until Washington was convicted and sentenced, and since no fine or costs were imposed its security interest lapsed and it returned the cash to Washington's lawyer. The state lost nothing—except, of course, the honest administration of justice.

The government argues that Ward's conduct *might* have resulted in a loss to the state. Suppose that an honest judge would have fined Washington or imposed the costs of the criminal proceeding on him and the money would have been deducted from the cash bonds and paid over to the state. Then the state would have been out of pocket as a result of Ward's dishonesty. Yet even then the loss would have nothing directly to do with the cash bonds. It would be a loss of prospective incomes from fines, albeit fines secured by the cash bonds. We need not opine on whether the state may be said to have a property right in such prospects, cf. *United States v. Gimbel*, 830 F.2d 621, 626–27 (7th Cir. 1987), since there is no evidence that the state lost either fine income or costs income as a result of the bribe, any more than it lost its security interest. Remember that when Judge McCollom sentenced Washington he had forgotten about the bribe. Presumably therefore he gave him the same sentence that an honest judge would have given him. And it was a sentence purely of imprisonment, with no fine or costs or other monetary dimension. Since the sentence was rescinded, the state lost whatever deterrent or retributive or rehabilitative or other benefits might have flowed from incarcerating Washington for 364 days (minus the cost of incarceration). But the state lost no money. Indeed, it derived a net "tangible" benefit from the bribe, by saving the cost of imprisoning Washington, while losing only "intangible" benefits of effective law enforcement. Cf. *United States v. House*, 808 F.2d 508, 509–10 (7th Cir.1986).

■ If the scheme to defraud had involved acceleration of the refund of the cash bonds, then the government could complain about a taking of its security interest. But that was no part of the scheme. The bond money was refunded in the ordinary course; that it was used to reimburse Ward for a bribe rather than to pay his attorney's fee had no effect on the state's security interest.

■ Finally, since the mail fraud statute punishes the scheme to defraud, and does not require that the intended victim actually have been defrauded, see, e.g., *United States v. Dial*, 757 F.2d 163, 170 (7th Cir. 1985), Ward would be guilty if the scheme had been one to deprive the state of its security interest in the cash bonds (perhaps by earmarking the cash for reimbursement of the bribe and thus making it unavailable to secure a fine or costs), even if the scheme miscarried as a result of Judge McCollom's lapse of memory. But no such scheme was pleaded or proved; so far as appears, if McCollom had sentenced Washington to a fine equal to the cash bonds, rather than to imprisonment, Ward and Washington would have agreed that McCollom had carried out his part of the agreement. Yet in such a case, as in the actual case, the state's interest in the bonds would

not have been impaired or endangered in the least.

As in *Holzer,* so here, the government identified a property right which might support a prosecution under the mail-fraud or wire-fraud statutes, but, because the prosecution was conducted at a time when the intangible-rights theory was in full flower, failed to present facts showing that the scheme to defraud actually involved that property right. The scheme with which Ward was charged and of which he was convicted was not a scheme to take (or undermine, see *United States v. Dial, supra,* 757 F.2d at 170) any security interest or other property right that the state had in the cash bonds posted by Ward's client. It was instead a scheme to deprive the people of the state of their right—their intangible right—to the honest administration of the state courts.

It is almost a detail that the case was not presented to the jury on the basis on which the government now seeks to defend the conviction, though as stated in another post-*McNally* decision "the government may not now seek to uphold [the defendant's] conviction on facts and theory different from that charged by the grand jury." *United States v. Italiano,* 837 F.2d 1480, 1486 (11th Cir.1988). To like effect see *United States v. Ochs,* 842 F.2d 515 (1st Cir.1988); *United States v. Santa–Manzano,* 842 F.2d 1 (1st Cir.1988); *United States v. Baldinger,* 838 F.2d 176 (6th Cir. 1988); contra, *United States v. Perholtz,* 842 F.2d 343, 367 (D.C.Cir.1988) (per curiam). And the indictment in this case did not contain a mixture of readily separable theories, as in *United States v. Eckhardt,* 843 F.2d 989, 996–97 (7th Cir.1988). The only significance placed on the cash bonds in the indictment and trial was that the mailing of the refund checks to Ward was the unlawful use of the mails on which his conviction was based; and it was unlawful not because it deprived the state of any interest it may have had in the bonds but because it facilitated the bribery of Judge McCollom by furnishing Ward with a ready source of cash from which to recoup the bribe by charging it back to his client.

The root difficulty of the government's case is not that the case went to the jury on a completely different theory from the one argued in this court but that the theory now pressed has no support in the record. Nevertheless we are distressed that the Assistant United States Attorney who both tried the case and argued this appeal told us that this case is and always has been about defrauding the state of its property interest in the bail bond. In his closing argument to the jury, he had sung a different tune:

> Ward, through a bribe, deprived Cook County, Chicago—the people of Chicago —and the Circuit Court ... of their right to the honest, faithful and loyal services of that court, its judge, John McCollom, and a police officer, Ira Blackwood. He used the United States mails to further that scheme by getting paid and that is a crime of mail fraud. That is the crime charged in the indictment—

not defrauding the state of its property interest in the bail bonds.

The order setting aside Ward's conviction is

AFFIRMED.