UNITED STATES of America,
Plaintiff–Appellee,

v.

Paul R. BONANSINGA,
Defendant–Appellant.

No. 88–1276.

United States Court of Appeals,
Seventh Circuit.

Argued June 14, 1988.

Decided Aug. 25, 1988.

Steven J. Rosenberg, Steven J. Rosenberg P.C., Chicago, Ill., for defendant-appellant.

Larry A. Mackey, Asst. U.S. Atty. (J. William Roberts, U.S. Atty.), Springfield, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, CUDAHY and MANION, Circuit Judges.

MANION, Circuit Judge.

Defendant-appellant, Paul Bonansinga, appeals from the district court's denial of his Motion to Vacate Judgment of Conviction which was filed in the wake of the Supreme Court's decision in *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). We affirm.

## I.

Bonansinga was indicted in 1984 on 27 Counts arising from his alleged abuse of the offices of City Councilman of Springfield, Illinois and Commissioner of City, Water, Light & Power (CWLP). On December 6, 1984, following a jury trial, Bonansinga was found not guilty of 24 of the 27 Counts but was found guilty of 3 Counts of mail fraud. The defendant appealed and we reversed his conviction on one of the contested Counts. *United States v. Bonansinga*, 773 F.2d 166 (7th Cir.1985). The two remaining Counts, under which Bonansinga was ultimately resentenced, charged him with defrauding the citizens of Springfield and customers of CWLP of their right to the loyal, honest and faithful service of the Commissioner of CWLP (an "intangible rights" theory) and, at the same time, with defrauding the citizens of Springfield and customers of CWLP of money and property (a tangible rights theory). By the time he filed the instant Motion to Vacate Judgment of Conviction, Bonansinga had completely discharged his sentence.[1]

Subsequently, the Supreme Court handed down its decision in *McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), in which the Court held that a scheme to defraud individuals or entities of "intangible rights" could not, standing alone, support a conviction under the federal mail fraud statute, 18 U.S.C. § 1341.[2] Pursuant to Federal Rule of Criminal Procedure 35 and in light of *McNally*, Bonansinga petitioned the district court to vacate his conviction on the ground that it was fatally tainted as the result of his having been prosecuted simultaneously under a permissible as well as an impermissible theory of mail fraud. The

government concedes, as surely it must, that in light of *McNally* it was improper to have indicted the defendant, even in part, on an intangible rights theory. However, the government argues that because the only evidence introduced in support of Bonansinga's intangible rights prosecution involved his participation in a scheme to defraud Springfield's citizens of money and property—tangible property interests—the convictions under the mail fraud statute were lawful. The district court adopted precisely this reasoning in denying the Rule 35 motion and Bonansinga timely appealed.

## II.

■ Initially, we are confronted with a jurisdictional question which, although not raised by the parties or by the district court, we are bound to address *sua sponte*. *Wilson v. Civil Town of Clayton, Indiana*, 839 F.2d 375, 384 n. 3 (7th Cir.1988). A motion to set aside a judgment of conviction rendered by a federal court is ordinarily filed pursuant to 28 U.S.C. § 2255. This procedural avenue is foreclosed to Bonansinga, however, because having completely discharged his sentence he cannot satisfy § 2255's "in custody" requirement. *See* 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a court established by Act of Congress ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.") Similarly, Rule 35 of the Federal Rules of Criminal Procedure, the rule pursuant to which Bonansinga proceeded in the district court, is not an appropriate device with which to challenge a judgment of conviction. Rule 35 has been construed "[t]o permit correction at

---

1. Notwithstanding that Bonansinga had already completed serving his sentence when he filed his Rule 35 motion, the district court held the motion timely because Rule 35 permits correction of an illegal sentence "at any time." Bonansinga, however, was not contesting his *sentence*, rather he sought to vacate his judgment of conviction. Accordingly, Rule 35 did not provide the district court with jurisdiction to entertain Bonansinga's motion. *See infra.*

2. Entitled "Frauds and swindles," the mail fraud statute provides, in part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises ... places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, ... or knowingly causes to be delivered by mail ... any such thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both. 18 U.S.C. § 1341.

any time of an illegal *sentence*, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence." *Hill v. United States*, 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962) (emphasis in text); *United States v. Scherer*, 673 F.2d 176, 178 n. 3 (7th Cir. 1982). Instead, Bonansinga should have petitioned the district court for a writ of error *coram nobis* which provides the same general relief as a writ of habeas corpus under § 2255 but which remains available to a defendant *after* he has been released from custody. *Id.* at 178; *United States v. Dellinger*, 657 F.2d 140, 144 (7th Cir.1981). In the interest of fairness and judicial economy, we will construe Bonansinga's Rule 35 motion as a *coram nobis* petition.

In *United States v. Keane*, 852 F.2d 199 (7th Cir.1988), we recently explored at some length the historical and procedural evolution of the writ of error *coram nobis*. *See also United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Suffice it for present purposes to say that relief in the nature of *coram nobis* may lie where the asserted defect in criminal proceedings involves an error of law which results in a complete miscarriage of justice. *Scherer*, 673 F.2d at 178. *Keane* held that conviction and punishment for an act that the law does not make criminal, essentially Bonansinga's contention on appeal, constitutes "a paradigm miscarriage of justice." *Keane*, at 205. Our decision in *Keane* also stated, however, that where an indictment charges a valid criminal offense *coram nobis* relief is unavailable. *Id.* at 205. For the reasons set forth below, we conclude that the conduct with which Bonansinga was charged, and for which he was ultimately sentenced and convicted, was conduct that remains proscribed by the federal mail fraud statute as interpreted in *McNally*.

■ In pertinent part, the government's indictment of Bonansinga reads as follows:

From in or about March, 1979, and continuing to the date of the filing of this Indictment in the Central District of Illinois, and elsewhere,

PAUL R. BONANSINGA,

the Defendant herein,

together with other co-schemers devised and intended to devise a scheme:

(a) to defraud the citizens of the City of Springfield, the customers of CWLP, the City of Springfield, and CWLP of their money and property by collusion, corruption, dishonesty, bribery, theft, and fraud and to obtain money, property and things of value by false and fraudulent pretences, representations, and promises, which money, property and things of value include, but are not limited to:

\*     \*     \*     \*     \*     \*

ii) the taking of CWLP property and services valued in excess of $4,000;

and

(b) to defraud the citizens of the City of Springfield, the customers of CWLP, the City of Springfield, CWLP, and the City Council of the City of Springfield of their right to the loyal, honest, and faithful services of Paul R. Bonansinga, free from the influence of corruption, collusion, partiality, dishonesty, bribery, theft, and fraud.

Specifically, the two Counts under which sentence was ultimately imposed on Bonansinga, Counts 23 and 24, alleged that he had obtained paint and auto supplies for his personal use from an entity known as SMW Auto Supply and that he paid for those items by mail with City of Springfield and CWLP funds. These alleged abuses of office gave rise to Bonansinga's second purported violation of the mail fraud statute, his defrauding the citizens of Springfield of the loyal, faithful, and honest service of an elected official.

Bonansinga contends that the government prosecuted him under two separate and distinct theories of mail fraud, one permissible and one not, and that because it is impossible to determine which theory the jury accepted, his conviction must be set aside. In actuality, however, the indictment charges but a single scheme to defraud which had the dual effect of depriving the public of *both* tangible (money and property) and intangible (honest and faith-

ful service) rights. As this court concluded in the similar case of *United States v. Wellman*, 830 F.2d 1453 (7th Cir.1987), "... even assuming that these allegations were (in form at least) separate, the government could not logically prove one scheme without proving the other since the elements of the two were identical." *Id.* at 1463.[3] Thus, regardless of the language employed in his indictment, the fact remains that the evidence adduced by the government at trial unequivocally demonstrated Bonansinga's participation in conduct clearly proscribed by the mail fraud statute as construed in *McNally*.[4]

Alternatively, Bonansinga argues that if his indictment, in part under an intangible rights theory of mail fraud, does not necessitate that his conviction be overturned, the jury instructions tendered by the district court permitted the jurors to conclude erroneously that depriving the citizenry of Springfield of honest government service could, in and of itself, support a conviction for mail fraud. This argument is unpersuasive for two reasons. First, as stated above, the only evidence presented at trial that Bonansinga defrauded Springfield residents of their right to "good government" was evidence that Bonansinga had procured, for his personal use, paint and auto supplies which he then paid for with CWLP funds, a plain violation of the mail fraud statute. And second, this court's decision in *Wellman* upheld the very same instructions Bonansinga challenges here.[5] As we stated in *Wellman*:

> The charge, to the jury permitted conviction if it found *either* a "scheme to defraud" or that Wellman obtained money through "false pretenses, representations and promises." Because the instruction merely tracks the statutory language, without more it is plainly a correct statement of law. What is crucial is that the "scheme to defraud" was not defined in such a way as to allow conviction for conduct which was not an of-

---

3. In *Wellman*, the defendant was charged with participating in a scheme "to 'defraud M–Chem of its right to have safe and authorized equipment for the storage and shipment of hazardous chemicals'" *and* with "obtain[ing] money by means of false and fraudulent pretenses, representations and promises." *Id.* at 1463. Thus, as in the instant case, while the scheme charged in *Wellman* could fairly be characterized as involving both tangible and intangible elements, we concluded that viewed in its totality the defendant's conduct in *Wellman* amounted to a typical "garden variety fraud" and was therefore precisely the sort of conduct Congress intended to proscribe. *Id.*

4. The instant case is easily distinguished from two other post-*McNally* decisions of this court. Both *United States v. Holzer*, 840 F.2d 1343 (7th Cir.1988), and *Ward v. United States*, 845 F.2d 1459 (7th Cir.1988), involved indictments for mail fraud brought *solely* under an intangible rights theory. As we have endeavored to demonstrate, however, Bonansinga was indicted for illegally using the mails to defraud the public of money and property which, at the same time, also deprived citizens of the loyal and faithful service of a city official.

5. The district court instructed the jury that in order to find Bonansinga guilty of mail fraud the government had to prove the following propositions beyond a reasonable doubt:

> First, that the defendant willfully and knowingly devised or participated in a scheme to defraud, or for obtaining money or property by means of false pretenses, representations, or promises, as outlined for you in the summary of the indictment; and
>
> Second, that the defendant used the United States Postal Service by mailing, or causing to be mailed, some matter or thing for the purpose of carrying out the scheme to defraud.

Insofar as it is relevant, the district court's summary of the indictment appears below:

> Specifically, it is charged that from about March, 1979, continuing until July 24, 1984, in the Central District of Illinois and elsewhere, the defendant, together with co-schemers, devised and participated in a scheme to defraud CWLP and the City of Springfield of the honest services of the defendant as Commissioner of CWLP and further to defraud CWLP of its money and property by theft and fraud and to obtain money and property by false and fraudulent pretenses.

Bonansinga argues that the words "and further," as used by the district court in summarizing the indictment, demonstrate that the scheme charged contained two distinct elements either of which could have been the basis for his conviction. On the contrary, the phraseology employed by the district court would seem to require the jury to find that Bonansinga deprived the public of *both* tangible and intangible rights in order to be guilty of violating the mail fraud statute. As discussed both *supra* and *infra*, so long as the jury found Bonansinga guilty of illegally obtaining money and property by use of the mails, his conviction must stand.

fense. The jury instruction defining "scheme to defraud" was fully consistent with *McNally.*

*Id.* (emphasis added). *Wellman* counsels to look beyond the face of an indictment to its substance in order to determine whether an alleged scheme to defraud does in fact involve money or property as *McNally* requires. The scheme alleged in the instant case involved just such an attempt to deprive innocent persons of tangible property rights and Bonansinga's participation in the scheme was, in turn, the *only* evidence introduced in support of the government's intangible rights theory. Accordingly, we are satisfied beyond a reasonable doubt, as was the district court, that Bonansinga was convicted of conduct which, consistent with *McNally,* is in derogation of the mail fraud statute.

## III.

The district court's denial of relief is therefore

AFFIRMED.