**Thomas N. MOORE,
Petitioner–Appellee,**

**v.**

**UNITED STATES of America,
Respondent–Appellant.**

**No. 88–1347.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1988.

Decided Jan. 9, 1989.

Rehearing and Rehearing En Banc
Denied Feb. 22, 1989.

Kathleen Hogan Morrison, James P. Chapman & Assoc., Chicago, Ill., for petitioner-appellee.

Michael J. Shepard, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for respondent-appellant.

Before BAUER, Chief Judge, and CUMMINGS and CUDAHY, Circuit Judges.

CUMMINGS, Circuit Judge.

In the district court, petitioner Thomas N. Moore filed a motion for post-conviction relief under 28 U.S.C. § 2255. He had been convicted of five counts of mail fraud in 1985. In January 1988, the district court granted the petition and vacated the conviction and sentence, causing the government to take this appeal. We reverse.

Moore was formerly the Purchasing Agent for the Metropolitan Sanitary District of Greater Chicago ("MSD"). In March 1985, he was charged with five counts of mail fraud and a jury found him guilty on all counts. He was sentenced to

one year in prison on Count 1 and concurrent terms of three years' probation on Counts 2 through 5. As a condition of probation he was ordered to make restitution of $10,000 to the MSD. We affirmed the conviction. *United States v. Moore*, 791 F.2d 566 (7th Cir.1986). The petitioner has served his sentence but has not made restitution and therefore is still on probation.

Petitioner's motion to vacate his conviction and sentence was based on the subsequent decision of the Supreme Court in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). District Judge Plunkett, who had tried Moore, agreed that *McNally* controlled and therefore granted petitioner's motion to vacate the conviction and sentence. In his accompanying memorandum opinion, the district judge relied on the following rationale:

> the jury in Moore's case was never instructed to consider anything but the "good government" and "honest and loyal services" theories. Moore's jury was never asked to consider whether Moore's conduct deprived the MSD of money or property. The jury was never asked to consider whether the kickback Moore received rightfully belonged to the MSD. Had the jury been instructed on these issues, the result we reach may well have been different. But we cannot say that Moore's jury had to find that Moore deprived the MSD of money or property in order to have convicted him. (Page 10 of January 14, 1988, Mem.Op.)

The district court concluded that the indictment did not state an offense under the mail fraud statute and that Moore's conviction was "based solely on the deprivation of employee's loyal and honest services." *Idem* at 12. We respectfully disagree.

In deciding whether Moore's conviction was improper under *McNally*, we must consider the evidence, the indictment and the instructions.

### The Evidence

 The evidence here must be considered in the view most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Rollins and Slaughter*, 862 F.2d 1282, 1287 (7th Cir. 1988). As noted, Moore was the Purchasing Agent of the MSD in 1979 when he devised a scheme to rig bid openings on a contract to perform improvements on the Calumet Union Reservoir, a facility of the MSD. The contract was to be awarded to the lowest qualified bidder through a competitive secret bidding process. Under Moore's scheme, a predetermined bidder would win the contract with the highest possible bid that was lower than any competitors' bids. This was to be done by having the predetermined bidder secretly submit several bid price pages instead of one price page as was required. Moore would read the other competitors' bids first and then would read off only the highest of several prices submitted by the predetermined bidder that was still lower than the bid prices of the competitors. Then he would covertly discard the other bid price pages that had been submitted by the predetermined bidder.

After discussing this scheme with others, the following transaction occurred with respect to bids on the Calumet Union Reservoir contract. The G. Roberts Material Company submitted the first bid and its bid contained five different price pages in the following amounts: $64,000, $66,000, $68,000, $70,000 and $85,000. On November 20, 1979, this bid should have been opened first because it was submitted first. Instead, Moore first opened a competitor's bid for $86,900 and then another competitor's bid for $89,000. He then submitted only G. Roberts Material Company's $85,000 bid, thereafter throwing in his office wastebasket that company's four other bid pages. Thus MSD was required to pay $85,000 for this work, even though the Roberts Company had also submitted a $64,000 bid for it, thus costing MSD $21,000 more than it needed to pay for the improvements. The fact that the Roberts Company submitted a potentially binding offer for $64,000 is indicative of its willingness to perform the contract for $21,000 less than the bid selected by Moore. Moore chose the highest bid of the Roberts

Company's bids which was lower than the competing bids, appropriating the $21,000 price differential to the detriment of the MSD. Moore's secretary discovered the discarded pages in his office wastebasket, thus prompting the investigation. This was the only scheme put into evidence and clearly shows a violation of 18 U.S.C. § 1341 because it demonstrates how MSD was required to pay much more than it should have. Moore was given a $10,000 bribe in return for his part in the scheme. The evidence is thus fully compatible with *McNally* in that it involved a deprivation of money or property rather than merely intangible rights.

### The Indictment

■ It next becomes necessary to determine whether the indictment, which was returned prior to *McNally*, involves property as well as intangible rights. In pertinent part it charged that when Moore was the Purchasing Agent of the MSD, it advertised for bids on a contract to perform improvements on its Calumet Union Reservoir facility and that the contract was to be awarded to the lowest qualified bidder through a competitive, secret bidding process. Paragraph 3 of the indictment charged that from August 1979 until July 1980, Moore and his co-schemers devised a scheme to defraud the Metropolitan Sanitary District and the citizens of the Chicago Metropolitan Area of:

> (a) their right to the loyal, faithful and honest services of Thomas N. Moore in the performance of acts related to his public employment; and

> (b) their right to have the business of the Metropolitan Sanitary District conducted honestly, fairly and impartially, free from corruption, collusion, partiality, dishonesty, conflict of interest and fraud, and in accordance with the laws of the State of Illinois and the rules and regulations of the Metropolitan Sanitary District. (App. 2 p. 1.)

So far the indictment was obviously couched on a pre-*McNally* intangible rights theory. However, the next nine paragraphs alleged that it was part of the scheme to defraud through the above-de-

scribed bid rigging. As we have seen, this bid rigging resulted in the MSD's awarding the contract to the Roberts Material Company at $21,000 more than Roberts' lowest bid. The ensuing concise five counts of the indictment described five of the different mailings employed in the bid-rigging scheme. Thus it is apparent that the major portions of the indictment describe the bid-rigging process that resulted in the MSD's having to pay Roberts Material Company a much higher price than its lowest bid. Because of this emphasis in the indictment *McNally* was satisfied.

As we said in *United States v. Wellman*, 830 F.2d 1453, 1463 (7th Cir.1987), in terms applicable here, even if this indictment's allegations (here intangible rights and bid rigging) "were (in form at least) separate, the government could not logically prove one scheme without proving the other since the elements of the two were identical. The legal characterization the indictment places on the scheme should not obscure the fact that the specific conduct alleged in the indictment is clearly proscribed by the mail fraud statute." See also *United States v. Bailey*, 859 F.2d 1265, 1275–1276 (7th Cir.1988). Since it is obvious that the MSD would lose money from the scheme portrayed in paragraphs 3–11 of the indictment and later consummated, the case differs from *Magnuson v. United States*, 861 F.2d 166 (7th Cir.1988), where no money or property was lost. Instead Moore's scheme to defraud MSD of tangible property rights was "easily separable" from the scheme to deprive it of its intangible rights, so that the indictment is sufficient to state an offense under the mail fraud statute. *United States v. Eckhardt*, 843 F.2d 989, 997 (7th Cir.1988), certiorari denied, — U.S. ——, 109 S.Ct. 106, 102 L.Ed.2d 81, quoting from *United States v. Cooke*, 833 F.2d 109, 110 (7th Cir.1987).

### The Instructions

■ The jury was first told that the government must prove the scheme to defraud described in the indictment and that

the defendant used the mails in the manner charged in the five counts. Since the particular part of the scheme to defraud in the indictment was the bid-rigging charge, this instruction does not support Moore's argument that this was only an intangible rights case. The next instruction claimed to be erroneous reads as follows:

A scheme means some plan or course of action intended to deprive another of something of value *including intangible rights* (emphasis supplied).

This instruction mirrors the rule of *United States v. Keane*, 852 F.2d 199, 205 (7th Cir.1988), where we said "An indictment [here an instruction] adverting principally to rights to faithful service still may lead to a valid conviction if [as here] the prosecution shows that the defendant defrauded someone out of property, *including intangible property* " (emphasis supplied).

The next instruction thrice refers to intangible rights. It provides as follows:

The Metropolitan Sanitary District of Greater Chicago and the citizens of the Chicago Metropolitan area have an *intangible right* to the loyal, faithful and honest services of public employees and an *intangible right* to have the business of the Metropolitan Sanitary District conducted honestly, fairly and impartially, free from corruption, collusion, partiality, dishonesty, conflict of interest and fraud, and in accordance with the laws of the State of Illinois and the rules and regulations of the Metropolitan Sanitary District.

A scheme to defraud the Metropolitan Sanitary District or the citizens of the Chicago Metropolitan area of these *intangible rights* may constitute a scheme to defraud within the meaning of the mail fraud statute. (App. 2 p. 7.) (Emphasis supplied.)

The question before us is whether the conviction must be vacated because this in-struction erroneously referred to "intangible rights." The Supreme Court recently decided that even where an instruction contains constitutional error, it is for the court of appeals to determine whether the error is harmless beyond a reasonable doubt. *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 3109, 92 L.Ed.2d 460 (1986). *Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 1919, 95 L.Ed.2d 439 (1987), further expressed that if an erroneous instruction does not render "a trial fundamentally unfair, a conviction should be affirmed when the reviewing court can find that the record developed at trial established guilt beyond a reasonable doubt." We hold that considering the indictment and evidence, this record did establish Moore's guilt beyond a reasonable doubt because the MSD plainly lost money or property as a result of the proven bid-rigging scheme.[1] Consequently, the references to intangible rights in the pre-*McNally* instructions do not require the vacation of Moore's conviction. This conclusion is reinforced by Moore's own instruction that "if you do not believe beyond a reasonable doubt that Thomas Moore participated in a scheme to rig the Calumet Union Reservoir bid as alleged by the government, then you must find the defendant Thomas Moore not guilty" (p. 11 of Instructions given to jury, R. Item 57).

The jury was next told that the government need only prove one or more of "the acts charged in paragraphs 3 through 11"[2] of the indictment. Since paragraphs 3 through 11 were all facets of the bid-rigging scheme used with respect to the Calumet Union Reservoir improvements contract, *McNally* is satisfied by that instruction.

The final instruction given reads in pertinent part as follows:

You are instructed if you do not believe beyond a reasonable doubt that Thomas Moore participated in a scheme to rig the Calumet Union Reservoir bid as alleged

---

1. Moore would be penalized by the mail fraud statute even if his scheme had not succeeded in raking off cash for the benefit of the G. Roberts Material Company. *Keane,* 852 F.2d at 205.

2. For some reason unexplained to us, no mention was made of paragraph 12.

by the government, then you must find the defendant Thomas Moore not guilty.

This instruction also implicates property rights.

Moore relies solely on *United States v. Ochs,* 842 F.2d 515 (1st Cir.1988), to support his argument that the conviction must be vacated in view of the instructions given (Br. 24–25). However, the instruction there in its heading and text thrice told the jury that the scheme need not financially harm the City of Boston or cost it any money loss (842 F.2d at 524–525). In contrast, this jury was never instructed that it was proper to rely solely on the invalid intangible rights theory of criminal liability.

Here the jury could not have found a scheme to defraud the MSD of its intangible rights separate from a criminal scheme to obtain money or property by the bid rigging charged and shown. Consequently, the verdict did not rest exclusively on the insufficient intangible rights ground. Cf. *Zant v. Stephens,* 462 U.S. 862, 881, 103 S.Ct. 2733, 2744, 77 L.Ed.2d 235 (1983); *Stromberg v. California,* 283 U.S. 359, 367–368, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931).

Taken together and in the light of *Rose* and *Pope,* the indictment, evidence and trial emphasis, the instructions given do not require us to upset a conviction which was clearly based on loss of money or property by the MSD.

JUDGMENT REVERSED.

CUDAHY, Circuit Judge, dissenting:

There is no doubt that Moore was indicted and the jury instructed under the now-rejected "intangible rights" theory of mail fraud. The only question is whether, for the jury to find a deprivation of intangible rights, it had necessarily to find a deprivation of money as well. *See United States v. Wellman,* 830 F.2d 1453 (7th Cir.1987). As a matter of fact, the jury did not have to find an actual loss of money to the MSD as a result of the scheme since without the scheme Roberts might not have bid at all. In that event, the contract would have gone to a competitor at $86,900, which is $1,900 *more* than the Roberts bid that was actually accepted. Under this scenario the MSD lost absolutely no money as a result of the scheme.

It is true, of course, that if we look at the situation from within the scenario of the scheme as its planners conceived it, the purpose of the scheme was to deprive the MSD of the *lowest* Roberts bid. Thus, if we begin by assuming the plan in place, we can conclude that its aim was to deprive the MSD of the difference between Roberts' lowest bid and his highest one that came in under bids of the other bidders. And, of course, a scheme does not have to actually succeed in depriving a victim of money or property in order to fall under the mail fraud statute. *United States v. Dial,* 757 F.2d 163 (7th Cir.1985); *United States v. Reicin,* 497 F.2d 563 (7th Cir. 1974). But it *is* necessary that the jury find that a deprivation of "money or property" was necessarily envisioned by the scheme. *McNally,* 107 S.Ct. at 2882.

This case is admittedly a close one; the fact situation here does not fall easily into the categories established by existing cases. Unlike the schemes in cases where convictions have been upheld,[1] this

---

1. *See, e.g., U.S. v. Bailey,* 859 F.2d 1265 (7th Cir.1988) (upholding conviction for scheme which depleted failing bank's assets); *U.S. v. Bonansinga,* 855 F.2d 476 (7th Cir.1988) (upholding conviction for scheme under which defendant procured paint and auto supplies for personal use using public utility's funds); *U.S. v. Eckhardt,* 843 F.2d 989, 997 (7th Cir.1988) (upholding conviction because portion of scheme involving appropriation of investors' money alone states cognizable charge of wire fraud; portion alleging intangible rights violations in tax filings does not state cognizable charge but is "easily separable"); *U.S. v. Cooke,* 833 F.2d 109 (7th Cir.1987) (upholding conviction on counts involving scheme to deprive attorney's clients of money; vacating conviction on counts involving only deprivation of intangible rights); *U.S. v. Wellman,* 830 F.2d 1453, 1463 (7th Cir. 1987) (upholding conviction where scheme described in indictment using intangible rights language is clearly "a typical 'garden variety' fraud" defrauding buyer of its property).

scheme—even carried through successfully —did not unambiguously involve a planned deprivation of the intended victim's money. Unlike the schemes in cases where convictions have been set aside,[2] this scheme did not involve only intangibles such as justice or fair dealing, but rather involved financial transactions in which the victim stood to gain or lose. The problem here is that it is unclear whether the victim gained or lost money as a result of this scheme, although it is very clear that the victim lost its right to have its business conducted "honestly, fairly and impartially, free from corruption, collusion, partiality, dishonesty, conflict of interest and fraud."

Given that the issue is close, and that we are attempting to look back into the minds of a jury that was unambiguously instructed in intangible rights language,[3] I think it better to proceed with caution in extending *Wellman.* A contrary approach is not clearly wrong but it seems better policy, when we cannot say with certainty that the jury found a deprivation of money or property, to vacate the conviction. For this reason, I respectfully dissent.

---

**2.** *See Ward v. U.S.,* 845 F.2d 1459 (7th Cir.1988) (vacating conviction where bribery scheme did not result in any demonstrated loss of state's property); *U.S. v. Holzer,* 840 F.2d 1343 (7th Cir.1988) (vacating conviction for participation in scheme to bribe judge); *U.S. v. Cooke,* 833 F.2d 109 (7th Cir.1987) (vacating portion of conviction involving scheme to defraud official body of intangible rights only); *U.S. v. Gimbel,* 830 F.2d 621 (7th Cir.1987) (vacating conviction for scheme to conceal information from Treasury Department).

**3.** Further, the jury instructions in this case—unlike those in some of the other cases upholding intangible rights convictions—unambiguously left the jury the option of convicting the defendant for intangible rights deprivations *alone* ("A scheme means some plan or course of action intended to deprive another of something of value *including intangible rights.*" Appellant's App. at 153 (emphasis added)).