Jay **MESSINGER**, Petitioner–Appellant,

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

No. 88–1665.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 16, 1989.

Decided April 18, 1989.

Rehearing and Rehearing En Banc
Denied June 8, 1989.

Robert S. Bailey, Chicago, Ill., for petitioner-appellant.

Sheila Finnegan, Asst. U.S. Atty., Chicago, Ill., for respondent-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The petitioner-appellant, Jay Messinger, appeals from the district court's denial of his § 2255 motion to vacate his conviction and sentence. A jury convicted the appellant of mail fraud in violation of 18 U.S.C. § 1341. The trial court sentenced him to two years imprisonment and fined him one thousand dollars. A year after his conviction, the Supreme Court decided *McNally v. United States*, 483 U.S. 350, 359, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987), in which it held that the deprivation of intan-

gible rights alone could not support a conviction for mail fraud. In light of *McNally*, Messinger filed a petition to have his conviction and sentence vacated and his fine remitted pursuant to 28 U.S.C. § 2255. The district court denied his petition and ruled that the indictment and jury instructions properly alleged that Messinger had defrauded Cook County, the Circuit Court of Cook County, and the citizens of Cook County (collectively "Cook County") of a property right, notwithstanding the intangible rights language included in both the indictment and the jury instructions. On appeal, the appellant argues that his mail fraud conviction was premised solely on the loss of intangible rights by Cook County, and therefore, his conviction and sentence must be vacated. For the reasons set forth below, we affirm the district court's denial of the appellant's § 2255 motion.

## I

■ Because the appellant is seeking post-conviction relief, we review the evidence and draw all reasonable inferences from it in the light most favorable to the government. *See United States v. Cosentino*, 869 F.2d 301, 302 (7th Cir.1989); *Moore v. United States*, 865 F.2d 149, 151 (7th Cir.1989); *United States v. Gimbel*, 830 F.2d 621, 622 (7th Cir.1987). Messinger, an attorney, was charged in a one-count indictment with mail fraud in violation of 18 U.S.C. § 1341.[1] The indictment alleged that Messinger had devised and participated in a scheme with former Cook County Judge Wayne Olson to bribe Olson with respect to a case, *People v. Orengo*, in which Messinger was counsel for the defendant.

On the same day that a probable cause and suppression hearing was to be held in the *Orengo* case, Messinger met with Olson and worked out a deal. According to their scheme, Olson would make a favorable ruling for the defendant at the hearing—either by granting the defendant's motion to suppress the evidence found by the police or by finding that there was no probable cause to arrest the defendant—which would result in the dismissal of the case. After dismissing the case, Olson would have the cash bail bond that the defendant had posted with the court refunded by mail directly to Messinger.[2] Messinger would then turn over the cash bond refund to Olson as his bribe. The indictment alleged that this scheme deprived Cook County of certain intangible rights, such as the honest service of its employee, and that the mailing of the cash bail bond refund to Messinger provided the mailing necessary for a violation of the mail fraud statute to occur. A jury found Messinger guilty of mail fraud, and the court sentenced him to two years imprisonment and fined him one thousand dollars.

One year after his mail fraud conviction, the Supreme Court decided *McNally*. In *McNally*, the Court held that the loss of intangible rights alone could not support a conviction for mail fraud. *McNally*, 483 U.S. at 359, 107 S.Ct. at 2881. In light of *McNally*, Messinger filed a § 2255 motion in which he asked the district court to vacate his conviction and sentence and remit his fine on the grounds that he had not violated the mail fraud statute because his conviction was based solely on the loss of intangible rights by Cook County. Since Messinger had not objected to the govern-

---

1. The mail fraud statute provides in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do [uses the United States Postal Service or causes it to be used] shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1341.

2. Under Illinois bail law, a defendant can be released from custody pending disposition of his case if he deposits with the court ten percent of his bail in cash. ILL.ANN.STAT. ch. 38, ¶ 110–7(a)-(b) (Smith–Hurd Supp.1988). This money is eventually returned to the defendant minus ten percent of the amount deposited for bail bond costs and minus any fines and costs imposed by the court. *Id.* ¶ 110–7(f), (h). At the request of the defendant, the court can order the bail bond refund to be paid directly to the defendant's attorney. *Id.* ¶ 110–7(f).

ment's use of an intangible rights theory as the basis of the mail fraud prosecution or appealed from his conviction on this ground, the district court applied a cause and actual prejudice analysis to his § 2255 motion. *See United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982) (noting that the proper standard of review of a § 2255 motion seeking collateral relief based on alleged trial error to which no contemporaneous objection was made is the cause and actual prejudice test). The district court correctly ruled that Messinger had cause for not objecting to or appealing from his conviction for mail fraud on the grounds that it was predicated on an intangible rights theory because federal appellate and district courts had universally rejected this argument. The district court found, however, that Messinger suffered no actual prejudice because the indictment and jury instructions alleged a scheme to deprive Cook County of a property right. Therefore, the district court denied Messinger's § 2255 motion. We affirm.

## II

In *McNally*, the Supreme Court ruled that the deprivation of intangible rights alone, such as a state's loss of the honest services of its employees, could not form the basis of a mail fraud violation. The Court read the mail fraud statute "as limited in scope to the protection of *property* rights." *McNally*, 483 U.S. at 360, 107 S.Ct. at 2881 (emphasis added). The mail fraud statute, however, protects against the deprivation of all types of property, including intangible property. *Carpenter v. United States*, 484 U.S. 19, 21, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987); *Cosentino*, 869 F.2d at 306; *United States v. Keane*, 852 F.2d 199, 205 (7th Cir.1988) (petition for certiorari filed Jan. 14, 1989). Because the rule enunciated in *McNally* applies retroactively, *United States v. Folak*, 865 F.2d 110, 113 (7th Cir.1988); *Magnuson v. United States*, 861 F.2d 166, 167 (7th Cir.1988), our first task is to determine whether Messinger's bribery scheme defrauded Cook County of a property right. If the bribery scheme did not deprive Cook County of a

property right, but only of intangible rights, then Messinger's conviction for mail fraud would not pass muster under *McNally*. *See United States v. Holzer*, 840 F.2d 1343, 1348 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988).

The essence of the scheme between Messinger and Olson was that Olson would make a favorable ruling for the defendant, resulting in the dismissal of the case, in exchange for the cash bail bond refund that would normally be returned to the defendant. Under Illinois law, the requirement that the defendant deposit a cash bail bond with the court serves two purposes: (1) to help ensure that the defendant will show up at trial; and (2) to provide security for the payment of fines and court costs in case the defendant is convicted. *Ward v. United States*, 845 F.2d 1459, 1461 (7th Cir.1988); *People v. Dale*, 112 Ill.2d 460, 98 Ill.Dec. 39, 41, 493 N.E.2d 1060, 1062 (1986); *People v. Nicholls*, 71 Ill.2d 166, 15 Ill.Dec. 759, 763, 374 N.E.2d 194, 198 (1978). "A security interest is a property right." *Ward*, 845 F.2d at 1462 (citing *United States v. Security Indus. Bank*, 459 U.S. 70, 75–76, 103 S.Ct. 407, 410–11, 74 L.Ed.2d 235 (1982)). Therefore, Cook County has a property right, albeit an intangible one, in its security interest represented by the cash bail bond. The issue then is whether Messinger's scheme defrauded Cook County of its intangible property right.

In *Ward*, our court faced a similar issue to the one that confronts us in this case. In that case, Ward, an attorney, was convicted for mail fraud. As part of his scheme, Ward paid a bribe to a Cook County judge so that his client, a defendant in a case before the judge, would receive a favorable ruling. The judge forgot about the bribe and sentenced the defendant to jail, without imposing any fines or court costs. After being reminded about the scheme, the judge ordered that the defendant be released from jail and that the defendant's cash bail bonds be returned directly to Ward. *See id.* at 1461. Our court held that because the judge had forgotten about

the scheme and thus sentenced the defendant presumably in the same way that an honest judge would, Cook County was not defrauded of its security interest (intangible property right) because the cash bail bond refunds were returned in the ordinary course. When the court failed to impose any fine or court costs on the defendant, the government's security interest lapsed. *See id.* at 1462.

The *Ward* court, however, did note that "[i]f the scheme to defraud had involved *acceleration of the refund of the cash bonds,* then the government could complain about a taking of its security interest." *Id.* (emphasis added). This distinction that the *Ward* court drew is precisely the distinction between *Ward* and the case before us. As part of Messinger's scheme, Olson made a ruling in favor of Messinger's client that prematurely terminated the criminal prosecution of Messinger's client. This premature termination of the case resulted in an acceleration of the refund of the cash bail bond, and thus Cook County was defrauded of its security interest. Therefore, under the facts set forth above, Messinger's scheme defrauded Cook County of its property right.

Additionally, we note that this same scheme also defrauded Cook County of some intangible rights, such as the honest service of its employee (Olson). The same scheme may deprive a person or an entity of both a property right and an intangible right at the same time. *See United States v. Doe,* 867 F.2d 986, 988–89 (7th Cir.1989) (noting that the same scheme defrauded Cook County of its property right to tax revenues and its intangible right to good government); *United States v. Bonansinga,* 855 F.2d 476, 478–79 (7th Cir.1988) ("[T]he indictment charges ... a single scheme to defraud which had the dual effect of depriving the public of *both* tangible (money and property) and intangible (honest and faithful service) rights."). In this situation, a conviction for mail fraud is still proper because the person or entity was defrauded of a property right.

## III

Although Messinger's scheme defrauded Cook County of a property right, Messinger may still have been convicted solely for depriving Cook County of its intangible rights because that was the theory under which the government prosecuted the case. Therefore, we must now examine the indictment, the evidence, and the jury instructions to see if the jury necessarily had to convict Messinger for defrauding Cook County of its property right by wrongfully accelerating the refund of the cash bail bond, notwithstanding any intangible rights theory employed. *See, e.g., Moore,* 865 F.2d at 151; *United States v. Bailey,* 859 F.2d 1265, 1276 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989). In reviewing the indictment, the evidence, and the jury instructions, our "inquiry is limited to a review of the case as it was presented to the jury and not how it might have been presented." *Magnuson,* 861 F.2d at 168.

### A

A violation of the mail fraud statute consists of two primary elements: (1) a scheme to defraud; and (2) a mailing in furtherance of that scheme. *United States v. Wellman,* 830 F.2d 1453, 1461 (7th Cir.1987); *United States v. Shelton,* 669 F.2d 446, 454–55 (7th Cir.), *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed. 2d 454 (1982). In order for Messinger's indictment to be valid, the acts alleged in the indictment must constitute a violation of the mail fraud statute. *See Gimbel,* 830 F.2d at 624. In examining the indictment, we must look at the substance of the actions alleged, not at the language used, because "*McNally* prescribes more than a rule of pleading." *Wellman,* 830 F.2d at 1463; *see also Folak,* 865 F.2d at 113 ("[T]he presence of some language referring to an intangible rights theory is not always fatal to the indictment.").

Paragraph two of the indictment alleges that Messinger devised a scheme to defraud:

    (a) the Circuit Court of Cook County and the citizens of Cook County, as well

.as the public officials, and public employees of Cook County of their right to have the business of the Circuit Court of Cook County conducted honestly, fairly, impartially, free from corruption, collusion, partiality, dishonesty, conflict of interest, bribery and fraud;

(b) Cook County and its citizens of their right to have criminal cases prosecuted and decided free from the influence of corruption, collusion, partiality, dishonesty, conflict of interest, bribery and fraud; and

(c) the Circuit Court of Cook County and the citizens of Cook County of their right to the loyal, faithful and honest services of Judge Wayne Olson in the performance of acts related to his public employment.

Indictment, Rec. 1, ¶ 2, at 3. Clearly, the allegations contained in this paragraph are couched solely in intangible rights terms. Subsequent paragraphs of the indictment, however, allege:

It was further part of the scheme to defraud that Judge Wayne Olson agreed to accept money from JAY MESSINGER in return for a favorable ruling to the defense in the case of *People v. Hector Orengo*.

It was a further a part of the scheme to defraud that at JAY MESSINGER's request Judge Wayne Olson issued a cash bond refund order [CBR] which resulted in a check being issued to JAY MESSINGER by the Clerk of the Circuit Court which check was delivered by mail.

*Id.* ¶¶ 5–6, at 4. Without a doubt, these paragraphs describe a scheme which results in the acceleration of the refund of the cash bail bond. As discussed above, this scheme is a violation of the mail fraud statute because Cook County has been defrauded of its security interest (an intangible property right) represented by the cash bail bond. The fact that part of the indictment is couched in intangible rights terms is not controlling. "The legal character-

ization the indictment places on the scheme should not obscure the fact that the specific conduct alleged in the indictment is clearly proscribed by the mail fraud statute." *Wellman*, 830 F.2d at 1463; *accord Moore*, 865 F.2d at 152.

Moreover, we note that the scheme described in paragraphs five and six of the indictment is the *sole* scheme alleged in the indictment. Therefore, in order for the jury to find Messinger guilty of mail fraud for defrauding Cook County of its intangible rights alleged in paragraph two of the indictment, the jury *necessarily* had to find that Cook County was defrauded of its security interest represented by the cash bail bond. *See Cosentino*, 869 F.2d at 307 (stating that the same scheme defrauded an insurance company of both money and the honest service of its employees); *Bonansinga*, 855 F.2d at 478–79 (noting that because the indictment alleged only a single scheme, the scheme had the dual effect of depriving the public of both a property right and an intangible right). Therefore, under *McNally* this indictment still alleges a violation of the mail fraud statute.[3]

B

■ The appellant argues that the government prosecuted this case exclusively on an intangible rights theory and that the prosecution never contended that the object of the scheme centered on defrauding Cook County of the cash bail bond. A review of the evidence, however, shows that the refund of the cash bail bond, which provided the money for the bribe, was an integral part of the government's case at trial.

During the trial, the government played for the jury a taped conversation between Messinger and Olson in which they devised the scheme to defraud Cook County. The conversation went as follows:

---

**3.** Although our examination of the indictment has centered solely on whether it alleges a scheme to defraud Cook County of a property right, we note that the indictment properly alleges a mailing—the return of the cash bail bond refund. Indictment, Rec. 1, ¶¶ 6–7, at 4. This mailing did not have to be fraudulent in order to satisfy the mail fraud statute; it is enough that it was in furtherance of the scheme. *See Wellman*, 830 F.2d at 1461.

OLSON: If for some reason I can't sustain your motion to suppress, I'll deny it and say put on a hearing . . .

MESSINGER: Yeah . . .

OLSON: . . . and I'll find no probable cause on the ground that on the ground that [sic] they can't charge this man with that because there were 15 people around. It could of been any of them.

MESSINGER: Okay.

OLSON: Okay, that's the worst that'll happen.

. . . .

MESSINGER: Judge all I've gotta [sic] to do, he's supposed to give me money. *I've got the bond which is yours.* It's about three hundred and that, but I may get a little more.

OLSON: Fine. . . .

Government's Exhibit No. 2, Rec.Supp., at 5–6 (emphasis added). In this conversation, Messinger unambiguously states that the cash bail bond refund will be turned over to Olson. Indeed, this conversation so clearly sets forth the scheme alleged in the indictment that it must have made a strong impression on the jurors.

Moreover, in the government's closing arguments, it once again emphasized the refund of the cash bail bond as an essential part of the scheme to defraud Cook County:

I suggest to you, though, that in this case that mailing is central. First of all, the mailing of the bond refund check is an inevitable consequence of the finding of no probable cause. That's what Mr. Ridings testified to. It's an event that is triggered by Judge Olson's bribed decision. IN [sic] essence, what Olson is ruling when he rules no probable cause is that, well, that check is going to go out. So, it's part and parcel of the scheme.

. . . .

Now, clearly, though, the final and the most important reason that the mailing of that bond is in furtherance of this scheme to defraud is that fact that the bond is, in essence, the bribe. Again, when Messinger and Judge Olson talked

this matter over, Messinger says to Judge Olson, "The bond is yours."

Tr. of Final Arguments, Rec.Supp., at 18–19. During the course of its closing arguments, the government made other references to the significance of the return of the cash bail bond refund as part of the scheme to defraud Cook County. *See, e.g., id.* at 5–6 ("Judge Olson, who has, in fact, been promised the bond, been promised the money that the bond represents, agrees. . . ."); *id.* at 35 ("And the evidence in this case is that the [bribe] at least was intended to be paid out of the cash bond refund check. . . .").

Therefore, the government's evidence at trial was that the refund of the cash bail bond was an integral part of the scheme to defraud Cook County. Based on the evidence presented, the jurors could not have found Messinger guilty of mail fraud unless they also found that the mailing of the cash bail bond refund check was a part of the *sole* scheme alleged in the indictment.

## C

■ The appellant also contends that his conviction and sentence must be vacated because of erroneous jury instructions. Messinger claims that on four occasions during its charge to the jury, the district court instructed the jury on an intangible rights theory. When reviewing the charge to the jury, however, we do not look at isolated instructions by themselves. Instead, "we examine the jury charge as a whole," and "we review the instructions in the context of the overall trial and the arguments by counsel." *Baily,* 859 F.2d at 1277.

The appellant claims that the district court erroneously instructed the jury that "[a] scheme means some plan or course of action intended to deceive another and to deprive another of something of value including intangible rights." Jury Instructions, Rec.Supp. In a recent decision, however, our court has held that the use of this specific instruction can still lead to a valid conviction so long as " 'the prosecution shows that the defendant defrauded someone out of property, *including intangible*

*property.'* " *Moore,* 865 F.2d at 153 (quoting *Keane,* 852 F.2d at 205). Because the evidence in this case shows that Messinger defrauded Cook County of an intangible property right, we reject his argument that this instruction was reversible error.

■ The appellant also contests three other references to an intangible rights theory made by the district court in its jury charge:

(1) The phrase "intent to defraud" means that the acts charged were done knowingly with the intent to deceive, either to cause the loss of intangible rights, or to cause a financial gain to the defendant.

(2) Evidence has been introduced regarding the relevant law of bribery in Illinois. You may consider this evidence in connection with ascertaining whether the defendant participated in a scheme to defraud Cook County and its citizens of their right to have their business conducted honestly, fairly, impartially, free from corruption, collusion, partiality, dishonesty, conflict of interest and in accord with the laws of the State of Illinois.

(3) The Circuit Court of Cook County, the citizens of Cook County and the public officials and public employees of Cook County have an intangible right to have the Cook County judicial system operated honestly and fairly, free from corruption, dishonesty, bribery and fraud.

Jury Instructions, Rec.Supp. Although these instructions are erroneous in light of *McNally,* this does not mean that Messinger's conviction and sentence must automatically be vacated. Rather, we must determine whether these erroneous jury instructions were harmless beyond a reasonable doubt. *See Moore,* 865 F.2d at 153.

We believe that these instructions were harmless beyond a reasonable doubt. The district court clearly instructed the jury that in order to find Messinger guilty of mail fraud, the government had to prove that he "knowingly participated in the scheme to defraud *as described in the indictment; ....*" Jury Instructions, Rec. Supp. (emphasis added). As we have already discussed, there was only one

scheme alleged in the indictment and proved at trial—that Messinger defrauded Cook County of its security interest represented by the cash bail bond. Because there was only one scheme alleged, the jury necessarily had to find Messinger guilty of defrauding Cook County of its property right in order to find him guilty of mail fraud. *See Cosentino,* 869 F.2d at 307; *Doe,* 867 F.2d at 990. Thus, the intangible rights language contained in the these three jury instructions, when examined in light of the jury charge as a whole and the evidence presented at trial, did not prejudice the appellant.

### IV

In sum, a review of the indictment, the evidence, and the jury instructions shows that the jury necessarily had to convict Messinger for defrauding Cook County of its intangible property right in the security interest represented by the cash bail bond. Therefore, for all the reasons discussed above, the judgment of the district court is

AFFIRMED.