**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**John DOE, Defendant–Appellee.**

**No. 87–3135.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1988.

Decided Jan. 27, 1989.

lous" for Judge Williams to treat the two claims differently.

Bradley H. Lerman, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellant.

Patrick A. Tuite, Tuite, Mejia & Giacchetti, John L. Hines, Jr., Brent D. Stratton, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS, and CUDAHY, Circuit Judges.

BAUER, Chief Judge.

This case is before us on appeal from the district court's order granting appellee's petition for writ of error coram nobis pursuant to 28 U.S.C. § 1651(a). The district court found that appellee was convicted for conduct that was not criminal in light of the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). For the following reasons, we reverse.

## I.

The appellee, Stephen T. Gorny, served as a Deputy Commissioner on the Cook County Board of Tax Appeals ("the Board") from May 1, 1978 to June 3, 1982. As a deputy commissioner, Gorny was empowered to review complaints relating to real estate property tax assessments. During his tenure, Gorny received approximately $9,000 in cash payments from attorneys who practiced before the Board. These attorneys testified that they made the payments in exchange for Gorny's promise to deal favorably with their real estate assessment files. Although Gorny's receipt of these funds could not be linked directly to any action on a particular real estate assessment file, these attorneys won tax reductions for their clients at an unusually high rate of success. The average success rate for all attorneys was 35%, but one practitioner had a success rate of 80% and another had a success rate of 93% when their files were reviewed by Gorny. The evidence also showed that Gorny overruled his own decisions and those of other deputy commissioners which had denied requests for tax reductions after receiving payments from the interested attorneys.

Gorny was indicted on charges of mail fraud in violation of 18 U.S.C. § 1341, racketeering in violation of 18 U.S.C. § 1962(c), and obstruction of a federal criminal investigation in violation of 18 U.S.C. § 1510. The mail fraud indictment, using the "intangible rights" theory minted in *United States v. Isaacs*, 493 F.2d 1124, 1149 (7th Cir.1974), charged that Gorny schemed with those who bribed him to defraud:

a. The Board and the citizens of Cook County of their right to the loyal, faithful and honest services of Gorny in the performance of acts related to his public employment;

b. Cook County and its citizens, its public officials and public employees of their right to have the business of the Board of Appeals conducted honestly, fairly, impartially, free from corruption, collusion, partiality, dishonesty, bribery and fraud; and

c. Cook County and its citizens of their right to have real estate property taxes assessed and collected free from the influence of corruption, collusion, partiality, dishonesty, bribery and fraud.

After a jury trial, Gorny was found guilty of all charges. His conviction was affirmed by this court, *United States v. Gorny*, 732 F.2d 597 (7th Cir.1984). A more complete history of Gorny's dirty dealings is set forth in that opinion.

In 1987, the Supreme Court handed down its decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292

(1987). *McNally* held that the mail fraud statute, 18 U.S.C. § 1341, does not criminalize schemes to defraud the citizenry of its intangible right to have government affairs conducted honestly. *Id.* To fall within the ambit of § 1341, the indictment must allege a scheme to defraud the citizenry of a *property* right. *Id.*

Relying upon *McNally*, Gorny filed a Motion to Vacate the Conviction and Sentence Pursuant to Writ of Error Coram Nobis. Gorny alleged that he was convicted of a scheme to defraud the citizenry of its intangible right to good government, conduct which is not a crime under *McNally*. The district court granted his motion. 674 F.Supp. 263. The court also found that his convictions for racketeering and obstructing a federal investigation had to be vacated because those convictions had been tainted by improperly admitted mail fraud evidence. The government appealed from the district court's ruling.

## II.

■ This court recently reviewed the burden a petitioner must bear when seeking a writ of error coram nobis. *United States v. Keane*, 852 F.2d 199 (7th Cir. 1988). The writ "is limited to defects that zap the proceeding of any validity." *Id.* at 203 (citations omitted). In order to justify issuance of the writ, petitioner must demonstrate that the claim could not have been raised on direct appeal, that the conviction produces lingering civil disabilities, and that the error is the type of defect that would have justified habeas corpus relief pursuant to 28 U.S.C. § 2255. *Id.*

## A.

■ The failure of an indictment to state an offense, resulting in "conviction and punishment ... for an act that the law

does not make criminal," is a circumstance which triggers the right to habeas corpus relief. *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974). Gorny claims that he falls within the proscription set forth by Davis because the indictment charged him with a mail fraud violation under the "intangible rights" theory, which no longer is a viable theory of prosecution since *McNally*. To support his claim, Gorny cites the general allegations of the indictment set forth above.

■ To determine whether an indictment charges an offense under *McNally*, we must look past the legal characterization the indictment places on the scheme and examine whether the "specific conduct alleged in the indictment is clearly proscribed by the mail fraud statute." *United States v. Wellman*, 830 F.2d 1453, 1463 (7th Cir. 1987); *see also United States v. Bailey*, 859 F.2d 1265, 1275–76 (7th Cir.1988) (viability of indictment after *McNally* depends upon the substantive allegations, regardless of whether the indictment is couched in "intangible rights" language); *United States v. Bonansinga*, 855 F.2d 476, 480 (7th Cir.1988) (court must "look beyond face of indictment to its substance" to determine whether indictment satisfies *McNally*). In support of the general allegation of Gorny's participation in a scheme to defraud the citizenry of its "intangible right" to good government, Paragraph 6 of the indictment alleged: [1]

6. It was further part of the scheme to defraud that in return for the cash bribes, fees and other financial benefits and personal advantages described above, defendant, acting in his official capacity;

a. granted assessment reductions on certain complaints filed and caused

1. This paragraph distinguishes this indictment from another indictment recently considered by this circuit in *Magnuson v. United States*, 861 F.2d 166 (7th Cir.1988). In *Magnuson*, defendants were convicted of a scheme similar to the one in which Gorny engaged. The indictment alleged only an intangible rights violation. *Id.* at 168. For this reason, we affirmed defendants' motion to vacate their sentences pursuant to 28 U.S.C. § 2255. In the case before us now, the indictment included not only "intangible rights" language, but also the substantive allegation that Gorny received and accepted bribes from attorneys who appeared before the Board in return for which Gorny reduced the tax assessments of individuals represented by those attorneys.

to be filed at the Board of Appeals by the attorneys and tax consultants from where defendant had received said benefits and personal advantages;

b. reconsidered and granted reductions on certain complaints on which the Board of Appeals initially had denied the assessment reductions requested by said attorneys and tax consultants.

Paragraph 6 of the indictment alleges the existence of a scheme to defraud someone of property within the meaning of *McNally*. By reducing the tax assessments of certain individuals, Cook County lost property tax revenue. A governmental body is entitled, just like any other individual or corporate body, to protection under the mail fraud statute as long as the scope of that protection is limited to the protection of property rights. *See McNally*, 107 S.Ct. at 2881, n. 8 ("mail fraud statute ... had its origins in the desire to protect individual property rights, and any benefit which the Government derives from the statute must be limited to the Government's interests as property-holder"). Under Illinois law, Cook County has a property interest in its collected and uncollected tax revenues. *See e.g.*, Ill.Rev.Stat. ch. 120, § 697 (establishing that taxes on real property constitute a prior and first lien on the property); Ill.Rev.Stat. ch. 120, § 705 (imposing interest penalty on unpaid taxes); Ill.Rev.Stat. ch. 120, §§ 719–733 (establishing framework for forfeiture and sale of property for delinquent taxes).

In *United States v. Gimbel*, 830 F.2d 621, 627 n. 3 (7th Cir.1987), this circuit left open the issue of whether a scheme to deprive the government of tax dollars is cognizable under *McNally*. *McNally* stated that it would be error to include tax fraud issues in a mail fraud count, 107 S.Ct. at 2878 n. 4, presumably because federal income tax fraud was already punishable under 26 U.S.C. § 7201. The *Gimbel* court was concerned that tax fraud could form the predicate act for a mail fraud violation if a scheme to defraud the government of tax dollars was cognizable under *McNally*. That concern is not implicated in the situation before us now. Although tax fraud and the scheme in which Gorny participated may have the same effect upon governmental coffers, Gorny was not and could not have been convicted of tax fraud.

■ We find that the substantive allegations of the indictment set forth a scheme to deprive the victim of property rights in violation of mail fraud statute, thus stating an offense under *McNally*. Because the indictment charges an offense, Gorny is not entitled to relief on this ground. In addition, the racketeering and obstruction convictions must be reinstated because the mail fraud evidence was properly admitted.

### B.

Gorny also claims he is entitled to relief because of erroneous jury instructions. The district court instructed the jury that, to sustain the charges, the government must prove beyond a reasonable doubt: "First, that the defendant knowingly devised the scheme to defraud alleged in the indictment; and second, that for the purpose of carrying out the scheme or attempting to do so, the defendant knowingly caused the mails to be used in the manner charged in the indictment." The court defined a scheme to defraud as "a plan to deprive someone of something of value by means of false pretenses and representations. A governmental agency is deprived of something of value when it loses the loyal, faithful and honest services of one of its employees." The court further instructed: "Mere violation of the internal rules of the Cook County Board of Appeals is not, standing alone, sufficient to establish defendant's guilt of the mail fraud scheme charged in the indictment."

■ We agree with Gorny's contention that the instructions were erroneous, and on that basis his conviction on direct appeal might not have been affirmed. But because this appeal is before us on a writ of error coram nobis, we must ask whether these instructions would have warranted relief under 28 U.S.C. § 2255. *See Keane*, 199 F.2d at 203, (error alleged in coram nobis action must be the type of defect that

would have justified habeas corpus relief). "The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed. 2d 203 (1977) (citations omitted).

The jury was instructed that in order to convict, it must find that "the defendant knowingly devised the scheme to defraud *alleged in the indictment*" (emphasis added). Although the instruction defined the scheme incorrectly, the substantive scheme alleged by the indictment was that Gorny accepted bribes in return for reduced tax assessments. The evidence introduced at trial also removes any doubt regarding the nature of the scheme. Gorny did not deny that he received payments from certain attorneys. His sole defense at trial was that these payments were gifts, a defense which the jury rejected. No evidence was introduced to refute the evidence that the attorneys who made payments to Gorny enjoyed *unusually* high success rates. Nor was there any evidence to refute the evidence that after receiving payments, Gorny overruled previous Board decisions refusing to reduce tax assessments. In short, the jury could not have convicted Gorny unless it found he reduced tax assessments in return for bribes.[2] *See United States v. Bonansinga,* 855 F.2d 476, 479 (7th Cir. 1988) (unpersuasive to argue that jurors could have based a verdict on a "good government" theory where "the only evidence presented at trial that [defendant] defraud [his victims] of their right to good government was evidence that [defendant] procured for his personal use, paint and auto supplies ..."); *United States v. Pic-*

*colo,* 835 F.2d 517, 519–20 (3d Cir.1987) (no conviction was reasonably possible unless the jury found that the scheme involved obtaining money from the victim).

Although we find that the jury instructions were erroneous, we also find that Gorny's conviction on the basis of these instructions did not violate due process. The evidence in this case shows that Gorny was convicted because he defrauded Cook County of tax revenues in exchange for bribes, not because he defrauded Cook County of "good government." Therefore, the defective instructions cannot support Gorny's petition for writ of error coram nobis.

### III.

Because Gorny has not shown that his conviction was based upon an error that would justify habeas corpus relief, the decision of the district court is reversed.

---

2. We note that the jury was not instructed to find that Cook County lost tax revenues. In *Magnuson,* this circuit affirmed the district court's order to vacate defendant's convictions because the jury did not have to find a deprivation of money. The *Magnuson* court stated, "whether tax revenues were lost was not an issue at trial. The government does not point out any references to testimony regarding lost revenues, nor can we find such evidence." *Magnuson,* at 168–69. In this case, lack of an in-

struction regarding loss of tax revenues does not warrant affirmance of the district court's order granting Gorny's petition. The evidence at trial showed that the attorneys who bribed Gorny had 80% and 93% success rates when seeking tax reductions from Gorny. In addition, the evidence showed that in many cases Gorny, or another deputy commissioner, initially found that no tax reduction should be granted. After receiving a payment, Gorny overruled these previous decisions and reduced the assessments.