**James J. FRANK, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 89–1920.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 25, 1990.

Decided Sept. 24, 1990.

David W. Mernitz, Christopher Kirages, Stark, Doninger, Mernitz & Smith, Indianapolis, Ind., and Andrew C. Mallor and David J. Christiansen, Mallor, Grodner & Bohrer, Bloomington, Ind., for petitioner-appellant and James J. Frank, Bloomington, Ind., petitioner-appellant pro se.

JoAnna Wiegart and John F. Hoehner, Asst. U.S. Atty., Office of the U.S. Atty., Hammond, Ind., for respondent-appellee.

Before WOOD, Jr., CUDAHY and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Petitioner James J. Frank appeals from the dismissal of his section 2255 petition. For the reasons discussed below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 29, 1985, Frank was charged in a twenty-three count indictment, the charges stemming from Frank's involvement in a scheme to obtain favorable results for his clients in pending cases for driving under the influence ("DUI") and to prevent his clients' DUI convictions from appearing in the records of the Indiana Bureau of Motor Vehicles ("BMV").

Frank pled guilty to one count of mail fraud, under 18 U.S.C. §§ 2, 1341 (Count 2), and one count of obstruction of justice under 18 U.S.C. § 1503 (Count 23), in return for the government's agreement to dismiss the other counts. The district court sentenced Frank to three years imprisonment on Count 2 and suspended the sentence on Count 23, instead placing Frank on five-years probation to run consecutively with the sentence imposed for Count 2. His probation was conditioned on his paying a fine of $5,000 within the first six months of supervision.

■ After Frank was sentenced, the Supreme Court decided *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). *McNally* held that

while the mail fraud statute, 18 U.S.C. § 1341, clearly protects property rights, schemes to defraud the citizenry of the intangible right to good government do not fall within the statute's scope. *Id.* at 356, 107 S.Ct. at 2879. Frank filed his petition under 28 U.S.C. § 2255, seeking to vacate his conviction and sentence.[1] In his petition, Frank contended that Count 2 failed to state an offense for mail fraud under *McNally*. He also argued that the obstruction of justice charge in Count 23 was improperly brought under section 1503 and that his guilty plea to the obstruction of justice charge was not voluntarily made. On March 3, 1989, the district court denied Frank's section 2255 petition, and Frank appeals.

## II. ANALYSIS

On appeal, Frank renews his argument that (1) the indictment failed to state an offense for mail fraud under *McNally* and (2) that his guilty plea to the obstruction of justice charge was involuntary. We consider each of these arguments in turn.[2]

### A. *The Mail Fraud Conviction*

■ Count 2 of the indictment charges Frank with mail fraud. The mail fraud statute, 18 U.S.C. § 1341, contains two elements: the existence of a "scheme," and the use of the mails in furtherance of the scheme.[3] Frank argues that he is entitled to relief under section 2255 because the indictment did not charge that the scheme deprived any person or entity of money or property; that is, according to Frank, the indictment charged him with mail fraud under the no longer viable "intangible

---

1. Frank, who is currently serving his suspended sentence under Count 23, under the probation office's supervision, is in custody for purposes of section 2255. One who is under the custody of a parole board is in custody because the effects of parole significantly restrain one's liberty. *Mabry v. Johnson*, 467 U.S. 504, 507 n. 3, 104 S.Ct. 2543, 2546 n. 3, 81 L.Ed.2d 437 (1984); *Vargas v. Swan*, 854 F.2d 1028, 1033 (7th Cir. 1988).

2. Because Frank does not raise his argument that the obstruction of justice charge was improperly brought under section 1503, we do not consider it.

3. The mail fraud statute proscribes, among other things, conduct "devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341.

rights" theory of prosecution.[4] Section 2255 provides relief to a prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the Laws of the United States." Custody resulting from an indictment that fails to state an offense violates the laws of the United States. *United States v. Keane*, 852 F.2d 199, 204 (7th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 2109, 104 L.Ed.2d 670 (1989); *see also United States v. Gimbel*, 830 F.2d 621, 624 (7th Cir.1987).

We review the sufficiency of the indictment under a de novo standard. *United States v. Bucey*, 876 F.2d 1297, 1301–02 (7th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 565, 107 L.Ed.2d 560 (1989). When determining whether an indictment charges an offense under *McNally*, a court must look beyond how the scheme is legally characterized in the indictment and "examine whether the 'specific conduct alleged in the indictment is clearly proscribed by the mail fraud statute.'" *United States v. Doe*, 867 F.2d 986, 988 (7th Cir.1989) (citation omitted); *see also Bateman v. United States*, 875 F.2d 1304, 1308 (7th Cir.1989); *United States v. Bonansinga*, 855 F.2d 476, 480 (7th Cir.1988). An indictment alleging a deprivation of property rights is not defective under *McNally* just because it also alleges a deprivation of intangible rights. *United States v. Folak*, 865 F.2d 110, 113 (7th Cir.1988). Thus, "where a single set of facts establishes both a scheme to defraud a victim of money or property, as well as a deprivation of some intangible right," *McNally* does not require us to set aside the conviction. *Id.* at 113.

More generally, the reviewing court "should consider the challenged count as a whole and refrain from reading it in a hypertechnical manner." *United States v. Mosley*, 786 F.2d 1330, 1334 (7th Cir.) (quoting *United States v. Gironda*, 758 F.2d 1201, 1210 (7th Cir.), *cert. denied*, 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985)), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). Finally, we observe that a petitioner challenging the sufficiency of the indictment has a heavy burden: unless an indictment "is so defective on its face as to not charge an offense under any reasonable construction," it cannot be questioned under section 2255. *Ginsburg v. United States*, 909 F.2d 982, 984 (7th Cir. 1990) (quoting *Burchfield v. United States*, 544 F.2d 922, 924 (7th Cir.1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977)). With these principles in mind, we consider the indictment itself.[5]

---

**4.** The term "intangible rights" refers to the type of right referred to in *McNally*, e.g., the right to good government and to the honest and loyal services from an employee. We recognize of course that property rights may be intangible. *See Carpenter v. United States*, 484 U.S. 19, 25, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987) (*McNally* does not restrict the scope of section 1341 to tangible, as opposed to intangible, property rights); *United States v. Bates*, 852 F.2d 212, 216 (7th Cir.1988) (*McNally* distinguishes only between property rights and the intangible right of citizens to honest and impartial government, not between tangible and intangible property rights).

**5.** Paragraphs 6 through 12 of Count 1 of the indictment describe Frank's scheme as follows: 6. Beginning at least as early as in or about January, 1980, and continuing until approximately in or about November, 1984, the precise dates being unknown to the Grand Jury, ... JAMES J. FRANK, defendant herein, together with co-schemers known and unknown to the Grand Jury, which said known and unknown co-schemers included, but were not necessarily limited to, judges, temporary judges, and court bailiffs of the Lake County, Indiana judicial branch of government, devised and intended to devise, and participated in, a scheme to defraud:

(a) Lake County and its citizens, its public officials, and its public employees of their right to have the business of the Lake County Court system conducted honestly, fairly, impartially, free from corruption, collusion, partiality, dishonesty, conflict of interest, bribery and fraud, in accordance with the laws of the State of Indiana;

(b) Lake County and its citizens of their right to have DUI cases prosecuted and decided free from the influence of corruption, collusion, partiality, dishonesty, conflict of interest, bribery and fraud in accordance with the laws of the State of Indiana;

(c) The Lake County Court system and the citizens of Lake County of their right to the loyal, faithful and honest services of court bailiffs, judges, temporary judges and other public officials and employees in the performance of acts related to their public employment;

(d) The citizens of Lake County, Indiana, the citizens of the State of Indiana, and their

Paragraph 6 of Count 1 of the indictment[6] describes Frank's involvement in a scheme to defraud Lake County, the citizens, public officials, and public employees of Lake County and the state of Indiana of their right to good government and the honest services of employees. It is thus readily apparent that the allegations in this paragraph are based on the now defunct intangible rights theory of mail fraud. Because existence of intangible rights language is not necessarily fatal to the indictment, we must determine whether the other paragraphs of the indictment describing the scheme to defraud allege an offense that is cognizable under *McNally*. For the reasons discussed below, we conclude that they do.

The allegations in paragraphs 7 through 12 of Count 1 describe a scheme pursuant to which (1) Frank sought to obtain favorable results for his clients in pending DUI cases by causing court officials and other public officials and employees to act dishonestly in handling these cases and (2) sought to prevent his clients' DUI convictions from appearing on the BMV's record by causing these officials to take or destroy the records pertaining to his clients'

DUI cases. The indictment further alleges that Frank and others received fees and that Frank received larger than usual fees, in return for keeping Frank's clients' DUI convictions from appearing in the BMV's records.

In arguing that we should uphold Frank's conviction for mail fraud, the government claims that the indictment is sustainable under *McNally* because it alleges a scheme to deprive the government of tangible property. Specifically, the government contends that Frank solicited individuals within the state court system to steal files and records pertaining to his DUI clients. The government focuses on paragraph 9 of Count 1 of the indictment:

> It was further a part of the scheme to defraud that JAMES J. FRANK would cause and attempt to cause certain judges, temporary judges, court bailiffs and other public officials and employees to secrete, remove, destroy, and otherwise act dishonestly in regard to the disappearance of official court and prosecution records of the DUI charges files against JAMES J. FRANK's DUI clients

public officials and their public employees of their right to have DUI convictions properly reported to, and recorded by, the BMV.

7. It was part of the scheme to defraud that JAMES J. FRANK would and did seek to obtain favorable results for his DUI clients in DUI cases pending in all divisions of the Lake County Court system by causing certain judges, temporary judges, bailiffs, and other public officials and employees to act dishonestly, with a conflict of interest, and influenced by bribery and fraud contrary to the laws of the State of Indiana.

8. It was a further part of the scheme to defraud that JAMES J. FRANK would cause and attempt to cause certain judges, temporary judges, court bailiffs and other public officials and employees to fail to properly notify the BMV of the DUI convictions of JAMES J. FRANK'S DUI clients in the Lake County Court system as the same would otherwise be required by criminal and civil statutes of the State of Indiana.

9. It was a further part of the scheme to defraud that JAMES J. FRANK would cause and attempt to cause certain judges, temporary judges, court bailiffs and other public officials and employees to secrete, remove, destroy, and otherwise act dishonestly in regard to the disap-

pearance of official court and prosecution records of the DUI charges filed against JAMES J. FRANK'S DUI clients in violation of the laws of the State of Indiana.

10. It was a further part of the scheme to defraud that JAMES J. FRANK would cause and attempt to cause certain judges, temporary judges, court bailiffs and other public officials and employees to act dishonestly and in violation of the laws of the State of Indiana in their handling of the cases of JAMES J. FRANK'S DUI clients.

11. It was a further part of the scheme to defraud that JAMES J. FRANK would benefit from the aforementioned activities by receiving fees for himself, and others, from his DUI clients in return for JAMES J. FRANK'S promise to his DUI clients that their convictions for DUI would not appear in the records of the BMV.

12. It was a further part of the scheme to defraud that JAMES J. FRANK would and did agree with certain of his DUI clients that he would be paid a larger fee because of his ability to keep their DUI convictions off of BMV official records.

6. Count 2, which charges Frank with mail fraud, incorporates Count 1, which describes Frank's scheme.

in violation of the laws of the State of Indiana.

At oral argument, defense counsel contended that nothing in the record shows that any court or prosecutorial records were ever removed or destroyed and thus the BMV was then at most deprived of information pertaining to drunk driving convictions that was not transferred to the BMV from the courts. Because, according to defense counsel, this information is not of the type protected by the mail fraud statute under *Carpenter* and its progeny, defense counsel insists that the indictment fails to state an offense under *McNally*.

In addressing this argument, we observe at the outset that the claim that there is no evidence that any records were ever removed or destroyed goes not to the issue of whether the indictment alleges a deprivation of property rights under *McNally* but rather to the issue of whether there was a sufficient factual basis for Frank's guilty plea to the mail fraud charge. Under FED. R.CRIM.P. 11(f), before accepting a guilty plea, the trial court must determine that a factual basis exists to support the plea. The purpose of the rule is, in part, to ensure that a complete record for appeal exists that "mak[es it] clear exactly what the defendant admits to, and whether the admissions are factually sufficient to constitute the alleged crime." *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir. 1985), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986). The court can make this determination from anything appearing on the record, including the government's presentation of evidence. *United States v. Montoya*, 891 F.2d 1273, 1295 (7th Cir.1989). Because lack of compliance with the requirements of Rule 11 may be grounds for granting section 2255 relief, *Nevarez–Diaz v. United States*, 870 F.2d 417, 422 (7th Cir.1989), we address Frank's claim that the government's allegation that any records were removed is unsupported by the record.

■ Our review of the transcript of the plea hearing reveals that the government anticipated if Count 2 proceeded to trial, the evidence would show the following: When Guy Fulkerson was arrested for DUI in 1980, he retained Frank's legal services. Frank offered Fulkerson the choice of one of two fee arrangements. For the lower fee ($1,500), Frank would represent Fulkerson but would offer no promises as to the case's outcome; for the higher fee ($2,400), Frank would represent Fulkerson with a promise that Fulkerson's arrest or conviction would not be made part of his driving record maintained with the BMV and that Fulkerson would keep his license despite having two previous DUI convictions within the last four years. Fulkerson chose the latter arrangement. He subsequently surrendered his driver's license to one of the court personnel with the Lake County Court, pled guilty to the DUI, received a one-year restricted license, and a 180–day suspended sentence in the Lake County Jail, was placed on probation for one year, and was ordered to undergo alcohol abuse treatment. Fulkerson's DUI conviction, however, was never entered of record with the BMV, and three days after his court appearance, Fulkerson received from Frank the license he had surrendered to the court. Frank indicated in a subsequent interview that he had "fixed" Fulkerson's DUI conviction with the assistance of the court bailiff.

After reviewing the transcript of the plea hearing, we find that the events detailed above support the allegation in paragraph 9 of Count 1 of the indictment that Frank caused court officials to secret, remove, or destroy court records of Frank's DUI clients. An examination of Indiana law shows that the court record in a drunk-driving case consists of the license, as well as other documents. Under IND. CODE § 9–4–1–54(b)(2),[7] a person convicted of driving while intoxicated is subject to having his license suspended. If the sentence imposed recommends a driver's license sus-

---

7. Section 9–4–1–54, in force at the time of Fulkerson's conviction, was subsequently repealed and replaced by sections 9–11–1–5, 9–11–2–2 to 9–11–2–5 and 9–11–3–1 to 9–11–3–4. Although sections 9–4–1–54(b)(2) and 9–4–1–54(b)(3) have been rewritten, their substance remains essentially identical.

pension, the judge is to forward to the BMV the surrendered license along with the abstract of conviction, and the BMV must suspend the driving privilege of the person convicted. IND.CODE § 9–4–1–54(b)(3). The license, the abstract, and any other supporting documents relating to the conviction and sentence thus constitute court records.

In the present case, Frank returned this license to his client within three days of the court appearance, and the DUI conviction was never entered in the BMV's records. It is thus beyond dispute that the BMV did not receive Fulkerson's license.[8]

Frank contends that Indiana was deprived only of information of a sort not protected by the mail fraud statute when the BMV did not receive Fulkerson's license. We are not persuaded by this argument, which consists of a single bald assertion to this effect made by defense counsel at oral argument.

Rather, we conclude that the BMV has a property interest in the surrendered license itself that is cognizable under *McNally.* The above-cited provisions of the Indiana Code provide that the BMV is to receive the licenses of those individuals who have their licenses suspended for drunk driving. Under Indiana law, then, the BMV is entitled to possession of these licenses. While admittedly a close question, we believe that for purposes of *McNally,* the BMV has a tangible property right in the surrendered licenses based on these provisions. By arranging to have Fulkerson's license returned to him rather than transferred to the BMV, Frank thus deprived the BMV of property.[9]

Frank relies heavily on *United States v. Gimbel,* 830 F.2d 621 (7th Cir.1987), and *United States v. Murphy,* 836 F.2d 248 (6th Cir.), *cert. denied,* 488 U.S. 924, 109 S.Ct. 307, 102 L.Ed.2d 325 (1988), in claiming that the indictment did not sufficiently allege a scheme to deprive the government of property. Both cases, however, are distinguishable. In *Gimbel,* the defendant was convicted of mail fraud for engaging in a scheme to deprive the Treasury Department of reports of currency transactions and of other accurate and truthful information and data. The government argued that the defendant deprived the Treasury Department of tax revenues because his scheme concealed information, which if disclosed, might have enabled the Treasury Department to assess tax deficiencies. We rejected this argument and reversed the defendant's mail fraud conviction on the ground that the indictment accused him only "of not providing information to government officials 'whose actions could have been affected by the disclosure.'" *Id.* at 627 (quoting *McNally,* 483 U.S. at 361 n. 9, 107 S.Ct. at 2882 n. 9).

In the present case, however, paragraph 9 of Count 1 of the indictment alleges a scheme to defraud the government of court records. Under Indiana law, the surrendered license itself is part of the court record and is tangible property of the BMV. Thus, the indictment here alleges more than a scheme to deprive the BMV of information.

Similarly, *Murphy* did not involve a scheme to deprive the government of a tangible property right. The indictment in *Murphy* described the scheme as one "to defraud the State of Tennessee of the right

---

8. At the plea hearing, the government stated that restitution was inappropriate because other than the public being deprived of its intangible right to good government, there was no discernible victim of Frank's crimes. Frank argues that this statement shows that the government strayed from the record in claiming that he stole files belonging to the BMV. After considering both the actual language in paragraph 9 of Count 1 of the indictment and the factual basis for Frank's plea that the government presented at the plea hearing, however, we are unwilling to ascribe the weight Frank would have us give to a single statement that the government made when explaining the maximum and minimum sentences Frank could receive.

9. We observe that Fulkerson cannot be said to have a property interest in his surrendered license. While an individual has a property interest in his or her driver's license, *see Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971), one who loses a driver's license as a result of a valid conviction loses the attendant property interest as well. *See Doe v. Edgar,* 721 F.2d 619, 624 (7th Cir.1983).

to issue certificates of registration to charitable organizations to conduct bingo games, based on complete, true and accurate information to be provided by those applying for said permits." 836 F.2d at 251. The government contended that the bingo license was a property right and that it was deprived of its right to object to the issuance of these licenses when the defendant provided false information to the secretary of state's office and received a license for an inactive masonic lodge. The Sixth Circuit reversed the defendant's mail fraud conviction, holding that Tennessee's right to accurate information pertaining to its issuance of bingo permits constituted an intangible right. It is true the *Murphy* court stated that while the bingo license may be property of the holder once issued, it is not property of the state. *Id.* at 253–54. In *Murphy*, however, the government's claim that the license was property was not supported either by any allegation in the indictment or by any provision of state law.

We therefore conclude that the indictment in the present case sets out a scheme to deprive the government of property rights in violation of section 1341, thus charging an offense cognizable under *McNally*.[10]

### B. Obstruction of Justice

Frank was charged in Count 23 of the indictment with obstruction of justice under 18 U.S.C. § 1503, based on his wrongful attempt to interfere with a grand jury investigation.[11] Frank contends that his plea to Count 23 was not knowingly and voluntarily made because had he known that Count 2 did not allege a crime in light

of *McNally*, he would not have accepted the package deal containing Counts 2 and 23 offered to him by the government.

We have already concluded, however, that Count 2 of the indictment states an offense that is cognizable under *McNally*. Frank's argument that his guilty plea to the obstruction of justice charge in Count 23 must therefore fail.

Additionally, we observe that Count 2 and Count 23 are separate statutory violations: Count 23, based on Frank's wrongful attempt to interfere with a grand jury, states an offense under section 1503; Count 2, based on the above-described scheme, states an offense under section 1341. Thus even if Frank could have established cause and prejudice for his failure to raise the issue of voluntariness prior to filing his section 2255 petition,[12] we would be unimpressed with his argument that his plea to the obstruction of justice charge was involuntary because Count 23 was part of a package deal. Frank had the choice of pleading guilty to two counts of a twenty-three count indictment or going to trial. That this was the choice he was given does not make his plea to Count 23 involuntary.

For the foregoing reasons, the district court's dismissal of Frank's petition for section 2255 relief is

AFFIRMED.

CUDAHY, Circuit Judge, dissenting:

*McNally* invalidated mail fraud convictions based on schemes to defraud the public of its intangible right to good government and to the honest and loyal services of government employees and officials.

---

10. The government also argues that the indictment is sustainable under *McNally* on the ground that it alleges a scheme to deprive the government of intangible property in the form of (1) information of the type protected by the mail fraud statute, and (2) the right to control driving privileges. Because we conclude that the indictment alleges a scheme to deprive the government of tangible property in the form of surrendered licenses, we do not address the merits of these claims.

11. Specifically, Frank was charged with obstruction of justice for his attempt to convince Carl

Madison, one of his DUI clients, to give false and misleading information to the Special Grand Jury regarding Madson's involvement with Frank's handling of his drunk driving case.

12. Defendants who plead guilty and then attack their sentences by raising new constitutional issues for the first time in a section 2255 petition must show cause and prejudice for failing to raise these issues on direct appeal from their convictions. *Bontkowski v. United States,* 850 F.2d 306, 313 (7th Cir.1988).

The Court held that Congress had intended to penalize only fraudulent schemes designed to effect a deprivation of money, or property and not of "intangible rights." [1] Perhaps because the prosecutors of this circuit were among the first to successfully employ the "intangible rights" theory of mail fraud in public corruption cases (*see, e.g., United States v. Isaacs,* 493 F.2d 1124 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974)), this circuit has had an understandably strong reluctance to invalidate mail fraud convictions based on intangible rights deprivations. For the most part, these efforts to salvage mail fraud convictions involving public corruption are commendable since they treat technicality with sophistication in the interest of substantial justice. Nonetheless, in all of our cases which distinguish away *McNally,* there has been reality and legitimacy to our efforts to fit the doctrine to the facts charged. With all respect, however, I do not believe that observation can be made of the efforts to save the case before us from invalidation.

Here the indictment charged essentially that the government of Indiana was deprived of information necessary to the administration of justice. This allegation was pure and simple of the intangible rights genre. A driver's license is simply evidence of a named person's right to drive a motor vehicle; it is not in itself, *in the context of this case,* a thing of value or "property"—despite the fact that such a license might *technically* be the "property" of the BMV. The defendant's activity here simply interrupted and permanently blocked the governmental flow of information. This is what the government lost—information—and the driver's license did not incorporate or symbolize what was lost. It was merely a device for facilitating the flow of information. *Cf. Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) (holding that information which had independent economic value was "property" for purposes of mail and wire fraud.) The defendant's coming into possession of the license document was purely incidental to the information blockage. Moreover, neither the indictment nor the proof shows any effort or intent to take any alleged "property" or to deprive an owner of money or property. In this case, the majority attempts a "reach" which even the claims of substantial justice cannot possibly justify.

I therefore respectfully dissent.

---

**1.** Congress promptly overruled *McNally* as to future prosecutions and thus indicated its approval of the intangible rights theory.