UNITED STATES of America, Plaintiff,

v.

Robert SEPULVEDA, Defendant.

No. 85 CR 22.

United States District Court,
N.D. Illinois, E.D.

April 9, 1991.

Fred Foreman, U.S. Atty. by Susan E. Cox, Asst. U.S. Atty., for plaintiff U.S.

Federal Defender Program by its Atty. Luis M. Galvan, for defendant Robert Sepulveda.

## ORDER

NORGLE, District Judge.

Defendant Robert Sepulveda has filed a motion to vacate his conviction pursuant to the All Writs Act, 28 U.S.C. § 1651. On June 26, 1985, defendant pled guilty to Counts One and Two of an indictment charging him with mail fraud. Defendant now argues that his conviction should be vacated because the indictment charged that he deprived the City of Chicago and its citizens of intangible, and not property, rights. *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1986).[1] Further, defendant argues that a writ of error coram nobis should issue because the judgment entered upon his plea of guilty was erroneous and has produced lingering civil disabilities. For the reasons discussed below, defendant's motion is denied.

Defendant served as a Chicago Police Officer assigned to the Major Accident Investigations Section ("MAIS"), including "hit and run" cases in which one or more individuals left the scene of an accident without filing the police report required by Ill.Rev.Stat. ch. 95½, paras. 11–402, 404 and 406. Noncompliance with these statutes can result in a maximum fine not to exceed $1000 and a maximum period of imprisonment of up to one year (*see* Ill.Rev. Stat. ch. 38, para. 1005–9–1). In addition, the violator's driver's license may be suspended.

The MAIS mailed notices to individuals whose vehicles were reported as being involved in these accidents, informing them that they were wanted for questioning and also apprising them of the penalties for noncompliance with the statute. Defendant was responsible for drafting these letters, mailing them, and conducting the resulting interviews. When these individuals arrived at MAIS, defendant warned them that they were in serious trouble and subject to fines and the loss of their license. He then demanded that some of these individuals pay him money to avoid these consequences; other individuals offered him money to do so. Defendant either did not file charges against these people or he filed false reports concerning the accidents in question.

The indictment charges a scheme:

(a) to defraud the City of Chicago and its citizens of the right to have the business of the Chicago Police Department Major Accident Investigation Section conducted in accordance with the laws of Illinois; honestly, fairly, impartially, and free from corruption, collusion, partiality, dishonesty, conflict of interest, bribery, and fraud; *and*

(b) *to obtain money by means of false and fraudulent representations, pretenses and promises.* [Emphasis added.]

(January 15, 1985 Indictment, Count I, Paragraph 2.) The factual basis for the defendant's plea of guilty read as follows:

Defendant will plead guilty because he is in fact guilty of the charges contained in counts One and Two of the Indictment. In pleading guilty to these counts, defendant acknowledges that:

(1) As charged in Count One of the Indictment, beginning at an unknown time and continuing through at least June 3, 1983, the defendant, a Chicago Police Officer assigned to the "hit and run" division of the Chicago Police Department, participated in a mail fraud scheme at the offices of the Major Accident Investigation Section of the Chicago Police Department at 54 West Hubbard Street in Chicago. As part of the scheme, the defendant would receive information that a particular driver had left the scene of an accident without filing a police report. The defendant then would send a letter to that individual requesting that he

---

1. In *McNally,* the Supreme Court held that the mail fraud statute, 18 U.S.C. § 1341, does not criminalize schemes to defraud persons of "intangible rights," concluding that Congress intended only to protect "property rights." *See United States v. Kerner,* 895 F.2d 1159, 1160 (7th Cir.1990).

come to 54 West Hubbard to explain why no report had been filed. When the person arrived at the defendant's office at 54 West Hubbard Street, the defendant told that person that he or she was in a lot of trouble and could lose his or her license and could be fined. After the defendant warned the individuals, he took money from them to keep them out of trouble and to make sure they didn't lose their licenses or get fined. After the defendant took the money, no charges were filed and the defendant filled out a false Supplemental Report on the accident. It was part of the above scheme that on or about January 22, 1983, the defendant caused a letter to be mailed to Ike Chae which letter was placed in the United States Mails to be delivered according to the direction thereon in violation of Title 18, United States Code, Section 1341.

(2) As charged in Count Two of the Indictment, and as part of the scheme to defraud outlined in Count One, on or about March 27, 1983, the defendant caused a letter to be mailed to Kirk Davis which letter was placed in the United States Mails to be delivered according to the directions thereof, in violation of Title 18, United States Code, Section 1341.

Plea Agreement, pp. 1–2.

■ In his motion, defendant argues that he is entitled to a writ of error coram nobis vacating his conviction.[2] Because frequent use of such writs would discard the benefits of the finality of judgments, they are reserved for compelling circumstances. *United States v. Keane,* 852 F.2d 199, 202 (7th Cir.1988), *cert. denied* 490 U.S. 1084, 109 S.Ct. 2109, 104 L.Ed.2d 670 (1989); *Kerner,* 895 F.2d at 1162. Thus, the writ may be granted only if the alleged defects in the prior proceeding sapped that proceeding of any validity. *Keane,* 852

F.2d at 203; *Kerner,* 895 F.2d at 1162. The petitioner also must show that the judgment of conviction produces lingering civil disabilities, and that the error is the type of defect that would have justified relief during the term of imprisonment. *Keane,* 852 F.2d at 203; *Kerner,* 895 F.2d at 1162.

Defendant here claims that the validity-sapping defect is the language of the indictment. Specifically, defendant contends that the indictment merely alleges conduct which amounts to a deprivation of intangible rights in that it only charges him with accepting cash payments which induced him to disregard his duties as a Chicago police officer. This dereliction of duty, in turn, deprived Chicago and its citizens of their intangible right to have the business of the police department conducted fairly and honestly. Defendant contends that the indictment lacks any allegations that defendant deprived anyone of any property right. Under *McNally,* defendant argues, these allegations do not support a charge of mail fraud.

■ The government responds that the defendant's narrow construction of the indictment is contrary to several post-*McNally* decisions. As this court recognized in its recent decision in *LeFevour v. United States,* 748 F.Supp. 579 (N.D.Ill.1990), *McNally* has not been treated as a rule of pleading because such a construction would render infirm every case prosecuted under an indictment alleging fraudulent deprivation of the right to good government. Furthermore, "[t]he legal characterization the indictment places on the scheme should not obscure the fact that the specific conduct alleged in the indictment is clearly proscribed by the mail fraud statute. *United States v. Cosentino,* 869 F.2d 301, 306 (7th Cir.), *cert. denied* 492 U.S. 908, 109 S.Ct. 3220, 106 L.Ed.2d 570 (1989) (quoting *Unit-*

---

**2.** A writ of error coram nobis is an order which corrects a prior judgment of the same court based upon an error which could not reasonably have been known by the parties or the court at the time the original judgment issued. *See United States v. Bush,* 888 F.2d 1145 (7th Cir.1989) (containing a detailed discussion of the history and purpose of the writ of error coram nobis). It is presently used only to amend or vacate criminal judgments (where the movant is no longer in custody) and is no longer used in civil cases, having been abolished and superseded by Fed.R.Civ.P. 60(b). *See* Fed.R.Civ.P. 60(b), advisory committee notes; *United States v. Kerner,* 895 F.2d 1159, 1163 (7th Cir. 1990).

ed States v. Wellman, 830 F.2d 1453, 1462 (7th Cir.1987)). Courts should consider the challenged count as a whole and avoid reading the indictment in a "hypertechnical manner." *Ginsburg v. United States*, 909 F.2d 982, 984 (7th Cir.1990). Accordingly, courts must focus on the substance of the acts alleged and not the fact that they are couched in language primarily suggestive of intangible rights. *LeFevour*, 748 F.Supp. at 582–583. Thus, a true intangible rights case is one that only involves "rights whose violation would ordinarily result in no concrete economic harm...." *United States v. Bailey*, 859 F.2d 1265, 1276 (7th Cir.1988), *cert. denied Ticktin v. United States*, 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989).

■ The government agrees that, after defendant was sentenced, the Supreme Court decided *McNally*, which held that while the mail fraud statute, 18 U.S.C. § 2342, clearly protects property rights, schemes to defraud the citizenry of the intangible right to good government do not fall within the statute's scope. *McNally*, 483 U.S. at 356, 107 S.Ct. at 2879–80. When determining whether an indictment charges an offense under *McNally*, a court must look beyond how the scheme is legally characterized in the indictment and "examine whether the 'specific conduct alleged in the indictment is clearly proscribed by the mail fraud statute.' " *United States v. Doe*, 867 F.2d 986, 988 (7th Cir.1989) (citation omitted); *see also Bateman v. United States*, 875 F.2d 1304, 1308 (7th Cir.1989); *United States v. Bonansinga*, 855 F.2d 476, 489 (7th Cir.1988). An indictment alleging a deprivation of property rights is not defective under *McNally* just because it also alleges a deprivation of intangible rights. *United States v. Folak*, 865 F.2d 110, 113 (7th Cir.1988). Thus, "where a single set of facts establishes both a scheme to defraud a victim of money or property, as well as a deprivation of some intangible right," *McNally* does not require us to set aside the conviction. *Folak*, 865 F.2d at 113.

■ In the present case, however, the indictment specifically charged the defendant with conduct which deprived individuals of money, clearly a property right, by means of fraudulent representations as part of the mail fraud scheme. Thus, the indictment on its face asserts more than merely the deprivation of intangible rights.

Moreover, the indictment in this case alleges that defendant deprived the state of potential revenue; namely, fines which would be assessed if defendant had properly charged these individuals and if these individuals had been convicted. That these monies were potentially, and not certainly, lost to the state is not determinative. This circuit recognizes that the potential for lost revenues constitutes enough of a property interest to sustain an indictment, and therefore, a conviction. *See, e.g., Doe*, 867 F.2d at 989; *Ginsburg*, 909 F.2d at 987; *Keane*, 852 F.2d at 205. If defendant had performed his duties as mandated by law, instead of merely using his position as a sworn police officer to obtain cash, the individuals in question would, if proven guilty, have paid their fines to the state rather than hand over their cash to him. As the Seventh Circuit pointed out in *Keane*, "the [mail fraud] statute does not limit the category of victims." *Keane*, 852 F.2d at 205.

In addition, a recent decision by the Seventh Circuit suggests that a property interest may exist in the licenses which defendant's fraudulent conduct prevented the state from suspending. *Frank v. United States*, 914 F.2d 828 (7th Cir.1990). In *Frank*, an Indiana attorney established a scheme whereby for an appropriate fee—and with the help of the court bailiff—he would guarantee to DUI clients that their DUI arrest and conviction would not appear on their driving record and that they would retain their driver's license, which might otherwise be suspended under Indiana law. The Seventh Circuit held that "the BMV [Bureau of Motor Vehicles] has a property interest in the surrendered license itself that is cognizable under *McNally*," and that defendant's actions deprived the BMV of that property interest. *Frank*, 914 F.2d at 833. Here, as in *Frank*, the state is entitled to suspend a

violator's driver's license if its operative statutes are violated. Sepulveda's charged conduct here prevented the state from suspending licenses in accordance with Illinois law, and thus short-circuited the criminal process in which the state may have received a property interest—either the assessed fine, or the actual license of a violator.

Defendant relies on *United States v. Holzer*, 840 F.2d 1343 (7th Cir.1988) to argue that there is no interest in the money which defendant took because the state's financial situation remained the same whether or not defendant took the money. However, this reliance is misplaced; as set forth above, in the present case, the state may well have lost revenues as a result of defendant's actions. Similarly, defendant's reliance on *Ward v. United States*, 845 F.2d 1459 (7th Cir.1988) is unavailing, as the present case is distinguishable from *Ward*. In the present case, unlike *Ward*, the property right in the fines and licenses were at the very least *potentially* lost as a result of defendant's charged conduct. Also, the state judge in *Ward* forgot about his bribe and sentenced the defendant to jail without imposing a fine or court costs. Once he remembered the bribe, the judge released the defendant and the bond was routinely returned to the defendant. Since the judge had not imposed a fine or costs and presumably imposed the same sentence that an honest judge would have imposed, the government's security interest in the bond lapsed. Unlike the state judge in *Ward*, defendant Sepulveda did not forget about the bribes he had taken. Here, as in *Messinger v. United States*, 872 F.2d 217 (7th Cir.1989), the defendant prevented (the investigation and) the potential charges from going forward.

In *Messinger*, the ruling by the bribed judge in favor of lawyer Messinger's client, prematurely terminated the criminal prosecution which resulted in an acceleration of the refund of the cash bail bond, and thus Cook County was defrauded of its security interest in the bond. In this case, the sworn police officer is one step ahead of any crooked lawyer or judge, because by using the mails to carry out his scheme and demanding cash in lieu of further investigation, the filing of charges and the posting of bail, the defendant police officer stops cold the entire criminal procedure. In the present case, as in *Messinger*, the premature termination of criminal proceedings deprived the government from obtaining the property (i.e., fine money or licenses) which it at least *may* otherwise have obtained.

For the reasons discussed above, defendant has failed to demonstrate that the indictment charged him with conduct which, in light of *McNally*, no longer constitutes mail fraud. Consequently, defendant has failed to establish the first prong necessary to obtain a writ of error coram nobis—that the prior proceedings were so completely defective as to render his guilty plea a nullity.

■ Further, defendant has not established that he is suffering from any lingering civil disabilities as a result of his conviction—the second prong of the coram nobis analysis. Defendant maintains that because his conviction prevents him from carrying a gun, he is obstructed from a preferred career choice, namely, law enforcement. However, defendant's right to being rehired at the police force is speculative at best. In *United States v. Craig*, 907 F.2d 653, 659–660 (7th Cir.1990), the court addressed the issue of whether an attorney's disbarment as a result of his conviction constituted enough of a disability to warrant relief and found it did not. The court ruled that there would still be reasons to disbar the defendant even were the conviction blotted out because of the role that the defendant played in the scandal. "The Illinois disciplinary rules ... do not discipline lawyers solely for a conviction; they punish for the conduct underlying the conviction." *Craig*, 907 F.2d at 659. Similarly, in *United States v. Bush*, 888 F.2d 1145 (7th Cir.1989), the Seventh Circuit reversed a writ of error coram nobis in which the movant (who was press secretary to former Chicago mayor, Richard J. Daley from 1955 to 1973) sought to vacate a pre-*McNally* mail fraud conviction which he claimed was creating a "civil dis-

ability" by hampering his efforts to obtain "high visibility PR [public relation] work." *Bush*, 888 F.2d at 1149. The court noted that: "A writ of error *coram nobis* does not rewrite history, could not alter circumstances suggesting to a prospective employer that Bush is untrustworthy...." *Id.* The court also pointed out that difficulty in procuring one's ideal employment is not a civil disability for the purposes of coram nobis. "Take away the conviction, and Bush still suffered a severe lapse of judgment that led Mayor Daley to show him the door. It is hard to recover from such humiliations. To endure a restricted occupational menu is not to suffer a civil disability." *Id.* at 1150.

Defendant Sepulveda, like defendants Craig and Bush, argues that his conviction precludes him from obtaining his preferred career choice. However, this obstacle does not constitute a civil disability. Further, while the vacation of the judgment of conviction might enable him to carry a gun, defendant's present right to a job with the police force, given his admitted conduct, is remote. Defendant speculates that he will be employed as a sworn police officer even though he has admitted that when he was previously a sworn police officer, he took cash bribes, failed to bring criminal charges when he should have, filed false police reports, and carried out his scheme while using the mails. A writ of coram nobis can neither rewrite history nor vindicate Sepulveda of the underlying dishonest (and, as discussed above, illegal) acts which gave rise to the challenged indictment.

## CONCLUSION

Defendant here has not carried his burden to convince the court to vacate his judgment of conviction. The indictment in question can fairly be construed to allege a deprivation of property rights under the applicable decisions of this court, as well as the Seventh Circuit. In addition, defendant's speculative claim that he is being barred from police work as a result of the conviction is insufficient to warrant relief.

For all of these reasons, defendant's motion is denied and his conviction stands.

IT IS SO ORDERED.