# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 04-3609 & 04-3610

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

HELMOS FOOD PRODUCT, INC. and
THEODORE MANTAS,

*Defendants-Appellants.*

_____

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 00 CR 214—**James F. Holderman**, *Judge.*

_____

ARGUED APRIL 15, 2005—DECIDED MAY 11, 2005

_____

Before FLAUM, *Chief Judge*, and BAUER and EVANS,
*Circuit Judges*.

EVANS, *Circuit Judge*. Theodore Mantas and Helmos Food
Product, Inc. petitioned the district court for a writ of error
coram nobis, challenging a $250,000 fine imposed on Helmos
Food in a criminal proceeding. They appeal from the denial
of their petition.

In 2001, we heard the direct appeal of Mantas and Helmos
Food from their convictions and sentences for violations of

21 U.S.C. §§ 458(a)(3), 461(a), and 676(a)—improperly storing adulterated poultry and meat products held for sale. For the facts involved in those charges, we refer readers with strong stomachs to our decision in *United States v. Mantas and Helmos Food Product, Inc.*, 274 F.3d 1127 (2001). The sentences in that case included the fine against Helmos Food, which the defendants now seek to set aside.

In petitioning for a writ of coram nobis, Mantas and Helmos Food seek an extraordinary remedy. *Barnickel v. United States*, 113 F.3d 704 (7th Cir. 1997). It is a remedy "limited to defects that sap the proceeding of any validity." *United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988) (citations omitted). In order to obtain the writ a petitioner must demonstrate, among other things, that the claim upon which the petition is sought could not have been raised on direct appeal. As we said in *Keane*, "[c]laims that could have been raised by direct appeal are outside the scope of the writ." *See also Barnickel*; *United States v. John Doe*, 867 F.2d 986 (7th Cir. 1989).

Helmos Food was fined under Chapter Eight of the United States Sentencing Guidelines,[1] which determines sentences for organizations. But, petitioners argue, the guideline is not applicable in this case because the company does not meet the definition of "organization." Rather, they say, in reality, since 1997, Helmos Food operated as a sole proprietorship, which is not included in § 8A1.2 and which, under Illinois law, has no legal status separate from its owner. They go on to argue that the issue could not have

---

[1] Because this is not a direct appeal but rather a petition for a writ of error coram nobis, the recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005), does not affect our analysis of this case. *See McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005): "We conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005."

been raised on direct appeal because no one but Mantas had access to the information about the company's status and he, a Greek immigrant and nonlawyer, did not know, and could not be expected to have known, the significance of the information for purposes of sentencing under the guidelines.

Although the government expresses doubt that Helmos Food was, in fact, a sole proprietorship, we need not delve into that issue. We find that even if Helmos Food was a sole proprietorship, there is no reason that the issue of the company's status could not have been raised on direct appeal. The legal status of Helmos Food was not some wraith floating through the proceedings unnoticed by anyone. Throughout trial and the sentencing proceedings, there were questions raised, which should have alerted counsel to the fact that Helmos Food's legal status was the subject of some debate and relevance. We cannot agree that Mantas was the only person who knew, or should have known, the facts. Furthermore, even if Mantas himself did not understand the consequences of the company's status, counsel should have been aware of its importance.

On the first day of trial, even before the jury was sworn, the judge said, "Let me inquire before the venire comes in on a question that I had, and that is whether the defendant Helmos Food Product is a corporation." Defense counsel said, "It's not, Judge." When asked whether it was ever a corporation, he answered, probably incorrectly, "no." The prosecutor then explained:

> That question is something that the government considered, as well, your Honor. What we can determine is that at one point in time Helmos Food was, in fact, a corporation. They were dissolved by the Secretary of State. They were then, as of March of 1997, licensed by the City of Chicago as a partnership, and were, at the time of this offense, a partnership.

The judge asked who the partners were and was told they were Mr. Mantas and his wife. Still curious, the judge asked whether the entity was a partnership in 1998. Defense counsel said, "[I]t was a partnership with one of the partners deceased, I guess, so I guess it's a sole— ." The judge asked whether Mrs. Mantas died before 1998 and defense counsel said, "No, I'm sorry, I stand corrected. She was still alive, Judge. She died last year" (that is, in 1999).

Later, Paul Wolseley, a compliance officer with the United States Department of Agriculture, testified, without objection, that Helmos Food was a "licensed partnership within Cook County, Illinois." In the instructions, also without objection, the jury was told that "Helmos Food Product is a partnership."

It is hardly surprising, then, that Helmos Food was sentenced under § 8A1.2 of the guidelines. The application notes to that section make clear that it applies to "corporations, partnerships, associations, joint-stock companies, unions, trusts, pension funds, unincorporated organizations, governments and political subdivisions thereof, and on-profit organizations." According to the government, the presentence investigation report described Helmos Food as a "licensed partnership between Theodore Mantas and his wife Mary." There was no objection to the determination, even though it was clear from the colloquy on the first day of trial that defense counsel knew Mrs. Mantas was deceased. It is true that at the sentencing hearing there was some confusion about Helmos Food's status. The company was often referred to as a corporation, even to the point that defense counsel tried to establish that the corporation, not Mantas, would be responsible for paying the fine, to which the judge remarked that piercing the corporate veil would be a means of obtaining payment from Mantas:

> [DEFENSE COUNSEL]: And I just want to be clear that while he is an officer of the now defunct corporation, it is the corporation that's responsible to pay that fine, correct?

> THE COURT: It is the corporation's responsibility, but, of course, there could be a piercing of the corporate assets for the purpose of obtaining that, can there not?

Whether this was an attempt on the part of Mantas to avoid paying the fine or not, it was enough for the prosecutor to step in and remind everyone that Helmos Food was a partnership so there would be no need to pierce the corporate veil to make Mantas responsible for payment. The prosecutor also remarked that Mr. Mantas's wife was "the other partner. So Mr. Mantas is the sole remaining partner."

The references to Helmos Food as a corporation were unfortunate but not significant. Whether the company was a corporation or a partnership would not make a difference in the application of the guideline. Like a corporation, a partnership, as the application notes show, is an organization for purposes of §§ 8A1.1 and 1.2. So there is no prejudice arising from the confusion about whether the company was a corporation or a partnership.

But the confusion has considerable relevance as to whether the issue that Helmos Food was a sole proprietorship could have been raised on direct appeal. At both trial and sentencing, attention was directly focused on Helmos Food's status, and it was quite clear that Mr. Mantas was going to be responsible for the fine. Counsel should have been alerted that if there was a way to prevent the imposition of a fine—by proving that Helmos Food was a sole proprietorship, for instance—there was no time like the present. In addition, at sentencing, both parties had available Mantas's 1997 and 1998 tax returns, specifically schedule C to form 1040, which is entitled "Profit or Loss from Business (Sole Proprietorship)." The information from which to argue that Helmos Food was not subject to guideline § 8A1.2 was available; it just was not used at trial or on direct appeal.

Under these circumstances, that the issue was not addressed does not mean it could not have been or that coram nobis is appropriate. Many potential issues are overlooked during trials and sentencing proceedings, some deliberately, some not. But the fact that those issues were not raised does not mean that years later extraordinary remedies can be invoked to uncrack the egg. The decision of the district court denying the writ is AFFIRMED.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*